[No. B209350. Second Dist., Div. Six. June 25, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE NAVARRO CERVANTES, Defendant and Appellant.

## Counsel

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Pamela C. Hamanaka, Assistant Attorney General, James William Bilderback II, and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GILBERT, P. J.**—The trial court knows that defendant is an undocumented alien and agrees it will suspend a state prison term and grant him probation if he pleads guilty to a charged criminal offense. Defendant pleads guilty to the charged offense and receives a grant of probation. He is unable to appear for a 30-day review hearing because he is in the custody of immigration authorities. Under these circumstances, defendant is not in violation of probation.

Jose Navarro Cervantes pled guilty to corporal injury to a former cohabitant (Pen. Code, § 273.5) and false imprisonment (*id.*, § 236). The court suspended imposition of sentence, placed him on formal probation for 48 months and ordered him to serve 60 days in county jail as a condition of probation. Cervantes appeals a judgment entered after the court revoked his probation and sentenced him to an aggregate term of two years eight months in state prison.

Because Cervantes did not violate his probation, we reverse.

### FACTS

After Cervantes pled guilty, the probation report informed the court of the difficulty supervising Cervantes if he were placed on probation because he is an "illegal alien" subject to deportation.

Nevertheless, at the sentencing hearing, on August 31, 2007, the court placed Cervantes on probation for 48 months and ordered him to serve 60 days in county jail. It ordered him to return to court on November 16, for a "30 day review." But on October 12, the sheriff transferred Cervantes to the custody of the federal Immigration and Customs Enforcement agency (ICE).

This created an insurmountable obstacle to Cervantes attending his November 16 review hearing. The probation officer informed the court that Cervantes could not be present because he was in the custody of federal immigration authorities.

The court then scheduled a probation violation hearing at which Cervantes appeared with his counsel Ronald Hamernik. The probation officer had previously reported that Cervantes had not violated probation. The court said, "There are two matters on for [a] violation of probation hearing. That's really not the appropriate term. It's a discussion of the defendant's ability to continue on probation given his immigration status." The court continued the hearing to obtain an updated report from the probation department regarding his immigration status.

The probation department filed a short memo that informed the court that on December 19, 2007, an immigration judge issued a decision ordering that Cervantes be "removed from the United States." But the immigration authorities did not deport him. He remained in "the custody of the [ICE]" until January 20, 2008, when sheriff's deputies took custody to return Cervantes to superior court for the hearing on his alleged probation violation. In her report, the probation officer reported speaking to "[ICE] Agent Soto." But "[n]o further information could be obtained as [Cervantes's] file was not available to Agent Soto."

At a June 19, 2008, probation hearing, no witnesses testified and no evidence was introduced. The court said to Defense Counsel Hamernik, "I have now been made aware that [Cervantes's] immigration status is such that he is no longer suitable for probation. [¶] Is that an accurate assessment, Mr. Hamernik?"

Hamernik: "Yes. And I would like to state, for the record, the fact that there has been no act or omission [or] act by the defendant to violate his probation. He has not failed to do anything. It's simply an issue of the fact that he does not have a permanent residence card."

The court: "Yes. . . . The Court was aware of Mr. Cervantes's resident status at the time he entered the plea. [¶] And at the time he pled and at the time he was sentenced, it was deemed appropriate for him to receive a probation sentence in this case . . . . "

The trial court found that Cervantes "has done no acts or omissions in violation of his probation . . . ." It said, "[H]is immigration status is such that he is no longer suitable for probation." The court then revoked his probation and sentenced him to the state prison term. It advised Cervantes that he had the right to appeal. It did not advise him that he had the right to withdraw his guilty pleas.

## DISCUSSION

Cervantes claims the court erred by revoking probation and sentencing him to state prison after the court conceded that it mistakenly ordered him to appear for a probation violation hearing. We agree.

■ A court may not revoke probation unless the evidence supports "a conclusion [that] the probationer's conduct constituted a willful violation of the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 982 [66 Cal.Rptr.3d 426].) Where a probationer is unable to comply with a probation condition because of circumstances beyond his or her control and defendant's conduct was not contumacious, revoking probation and imposing a prison term are reversible error. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 379 [10 Cal.Rptr.2d 263].)

■ Here Cervantes did not violate probation. The trial court found he had been improperly cited for a probation violation for missing the 30-day review hearing, after the sheriff had transferred him to the custody of the immigration authorities. Cervantes had already served the jail time the court ordered as a condition of probation. It then revoked Cervantes's probation and sentenced him to state prison, yet acknowledged Cervantes had done nothing wrong. The trial court's actions were an abuse of discretion. (*People v. Galvan, supra,* 155 Cal.App.4th at pp. 982–983; *People v. Zaring, supra,* 8 Cal.App.4th at p. 379.)

The Attorney General argues that the trial court could consider Cervantes's illegal immigration status in determining whether he could complete his probation terms. He is correct that this is a factor the court may consider in initially determining whether probation is appropriate. (*People v. Sanchez* (1987) 190 Cal.App.3d 224, 230 [235 Cal.Rptr. 264].)

But, as Cervantes notes, here the trial court was aware of his illegal immigration status when it first placed him on probation. Before the first sentencing hearing, the probation report concluded that Cervantes was "an illegal alien or *will be deported which will make supervising him in the community extremely difficult.*" (Italics added.) The trial court acknowledged that it "was aware of Mr. Cervantes's resident status at the time he entered the plea." It nevertheless found him suitable for probation.

The court revoked probation relying on information from a probation department memo. The memo stated that an "Immigration Judge" on December 19, 2007, had determined that Cervantes should be "removed from the

United States." The memo, however, did not indicate whether this administrative order was currently enforceable or whether appeals or review petitions had been filed with the Board of Immigration Appeals (BIA) or the federal courts. The probation officer did not attach a copy of the order, and the memo did not reflect whether the order had been stayed or if Cervantes was eligible for release on bond by the federal authorities.

The probation officer did not testify. In her memo, she said she talked with an ICE officer who did not have access to Cervantes's immigration file. She conceded that she was unable to provide further information to the court. She apparently could not explain why Cervantes remained in the United States after the December 19 order.

There is no evidence that during the six-month period between the December 19 and June 19 hearings the federal immigration authorities had taken steps to remove Cervantes from the United States. That is not unusual. The immigration review process may involve several stages, from the administrative law judge (ALJ) decision, to the BIA, and ultimately to the Ninth Circuit Court of Appeals. This process may not equal the bureaucratic nightmare faced by Josef K. in Franz Kafka's The Trial, but unfortunately it is often unpredictable and slow. "[A]n alien whose removal order is administratively final is not necessarily immediately deported." (*Prieto-Romero v. Clark* (9th Cir. 2008) 534 F.3d 1053, 1058.) Thus, even after an ALJ and the BIA rule that an alien is deportable, he or she may remain in the United States for years after a federal court grants a stay pending review. (*Ibid.*; *Andreiu v. Ashcroft* (9th Cir. 2001) 253 F.3d 477, 483; *Song v. I.N.S.* (C.D.Cal. 2000) 82 F.Supp.2d 1121, 1123–1124, 1134; *Magana-Pizano v. I.N.S.* (9th Cir. 1999) 200 F.3d 603, 609.) Moreover, aliens may be released on bond with the approval of federal authorities pending the outcome of the administrative case. (*Prieto-Romero*, at p. 1058.)

Here there was no evidence concerning the details of Cervantes's immigration case. The trial court could make no finding on the date he might potentially face deportation or be released. The probation department memo provided little assistance.

■ The trial court noted that Cervantes did not have a "permanent residence card." But that was also the case when it initially placed him on probation. Here the court revoked his probation solely because of his immigration status. But illegal alien status, by itself, neither precludes the granting of probation nor does it require its revocation. (*People v. Galvan, supra,* 155 Cal.App.4th at pp. 982–983; *People v. Cisneros* (2000) 84

Cal.App.4th 352, 358 [100 Cal.Rptr.2d 784] [illegal alien status "does not categorically preclude a grant of probation"]; *People v. Sanchez, supra,* 190 Cal.App.3d at p. 231.) A defendant whose immigration status was known to the court when he was placed on probation should not be treated as a probation violator simply because he remains undocumented. (*Galvan,* at pp. 982–983.)

In *Galvan,* the trial court revoked defendant Galvan's probation and sentenced him to prison after he had been deported to Mexico and had returned to the United States. The Court of Appeal reversed. It concluded that, notwithstanding Galvan's detention and deportation, his probation could not be revoked without proof that he had willfully violated his probation reporting conditions. Galvan could not be penalized because of matters beyond his control, such as the actions of the immigration authorities, or because of his undocumented status. (*People v. Galvan, supra,* 155 Cal.App.4th at pp. 981–984.)

Cervantes's immigration case, unlike Galvan's, had not advanced to the final stage of deportation. He, like Galvan, did not willfully violate any probation condition. Revoking probation and sentencing him to state prison are error. (*People v. Galvan, supra,* 155 Cal.App.4th at pp. 981–984.)

The Attorney General argues that Cervantes's counsel consented to a probation revocation, and therefore Cervantes has waived any objection to the judgment. We disagree.

Cervantes's attorney said he agreed with the court's analysis that Cervantes's immigration status conflicted with his suitability for probation. But he vigorously asserted that Cervantes had not violated any probation condition. Counsel was concerned that Cervantes could not comply with 48 months of probation terms if he were deported prior to the end of that period. Neither he nor the prosecutor requested the court to sentence Cervantes to state prison. Counsel's remarks suggest that he was urging the court not to penalize Cervantes while recognizing his limitations based on factors beyond his control. Counsel's statements cannot reasonably be construed to be a waiver of Cervantes's constitutionally protected rights. (*People v. Walker* (1991) 54 Cal.3d 1013, 1025 [1 Cal.Rptr.2d 902, 819 P.2d 861]; *Curry v. Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470 P.2d 345].)

■ That Cervantes could not comply with current probation conditions does not mean a prison sentence was appropriate. The trial court was concerned about Cervantes's immigration status interfering with the completion of his probation. But that factor did not mandate a state prison sentence

where there is no probation violation. Even where a defendant violates probation, the court has discretion to modify probation terms without imposing a prison term. (*People v. Hawthorne* (1991) 226 Cal.App.3d 789, 795 [277 Cal.Rptr. 85].)

Cervantes suggests the court could have reasonably accommodated its concern by modifying the probation period so it would terminate in 48 months, or earlier, if he were deported. There were a number of reasonable alternatives. But, by selecting a state prison term, the court penalized Cervantes because of factors beyond his control: the unpredictability of immigration appeals and the uncertainty about the speed of that process. The court also erred by not stating reasons why a prison term was selected in lieu of modified probation conditions. (*People v. Hawthorne, supra,* 226 Cal.App.3d at p. 795.) Given the facts of this case, this error "cannot be deemed harmless." (*Ibid.*)

Moreover, resentencing must proceed in a manner consistent with due process and fairness. Cervantes contends that there was an oral sentencing representation made with his plea agreement. He claims that before he entered his guilty pleas the court assured him that he would not receive a state prison term and that his maximum sentence would be limited to one year in county jail. He notes that at a hearing before Judge McGee on June 26, 2007, the prosecutor confirmed that the court had promised that Cervantes would not receive a state prison term if he pled guilty and that he would be placed on probation. Judge McGee asked the prosecutor: "People are indicating Judge Back made an offer in the matter of one year." The prosecutor: "Yes, Your Honor." Judge McGee: "[I]n jail plus felony probation?" The prosecutor: "Yes, Your Honor."

■ The Attorney General argues that there was never a formal plea bargain between the prosecutor and Cervantes about a specific sentence. He claims that consequently Cervantes is not in a position to request specific performance of a particular incarceration period. But the Attorney General ignores the significance of the trial court's statement about the maximum jail term and its implications for a defendant who pleads guilty relying on that representation. (*People v. Hill* (1976) 64 Cal.App.3d 16, 26 [134 Cal.Rptr. 443]; *People v. Gilbert* (1944) 25 Cal.2d 422, 443 [154 P.2d 657].) Courts may not discount the impact of such a representation on a plea, particularly where the defendant's claim about the court's promise, as here, is confirmed by the prosecutor on the record. (*Hill,* at p. 26.)

We reverse. The sentence and order revoking probation are vacated. The matter is remanded to the trial court with instructions that it reinstate Cervantes on probation. In all other respects, the judgment is affirmed. (*People v. Zaring, supra*, 8 Cal.App.4th at p. 379.)

Yegan, J., and Perren, J., concurred.

A petition for a rehearing was denied July 15, 2009.