Filed 9/25/14  P. v. Carpenter CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD AMOS CARPENTER,<br><br>    Defendant and Appellant. | A141175<br><br>(Humboldt County<br>Super. Ct. No. CR1400625) |

Defendant Richard Carpenter was required by the conditions of his parole to wear a Global Positioning System (GPS) device and charge it twice a day for one hour each time.  The trial court found him in violation of his parole after he traveled away from home without his charger, allowed the battery to die, and failed to contact his parole officer.  Defendant contends the trial court's finding must be reversed because the evidence did not demonstrate a willful violation.  We disagree, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2010, defendant was released from state prison on parole, at which time he signed a form identifying "special conditions of parole" with which he was required to comply.  The form itself set forth one such condition:  "You are ordered to participate in Global Positioning System (GPS) as directed by a parole agent.  You are ordered to comply with all zone and curfew restrictions, equipment charging requirement, and equipment care instructions with GPS participation in accordance with the instructions of a parole agent.  You may be charged criminally with theft or vandalism and fined for the cost of the equipment's replacement in the event that it is not returned, lost, stolen and/or

1

damaged." An addendum listed many other conditions of defendant's parole, including condition number 75—expressly initialed by defendant—which provided, "You shall charge the GPS device at least two times per day (every 12 hours) for *at least 1 full hour* for each charging time."

On February 7, 2014, the California Department of Corrections and Rehabilitation, Division of Adult Parole Operations, filed a Penal Code section 3000.08 petition for parole revocation, alleging that defendant violated a condition of his parole by disabling his GPS. The attached parole violation report alleged a violation of Penal Code 3010.10, subdivision (a), which provides that a person required to register as a sex offender pursuant to Penal Code section 290 shall not remove or disable, or permit another to remove or disable, a GPS.

A contested parole revocation hearing was held on February 24. The sole witness was Parole Officer Daniel Munoz, who testified as follows:

A GPS is a device a parolee wears strapped around his or her ankle that provides a "minute-by-minute, 24-hour tracking of where the parolee is." It allows the parole officer to determine a parolee's whereabouts "during the day, during the night, where he's sleeping."

The GPS device is battery operated, requiring twice daily charging for at least one hour each time, with a full charge lasting 12 to 16 hours. The charger is a small device—"two inches, two and a half inches, maybe about three inches wide and about [an] inch and a half deep"—with a six foot cord that "clips on" the device. The parolee is provided a charger that he or she is to use. When a battery is running low, the device will vibrate to alert the parolee the device requires charging. Munoz will also receive a text from the "Satellite Tracking of People" program (STOP) advising that a parolee's battery charge is low. This gives him an opportunity to contact the parolee and advise that the device needs to be charged. If a battery dies, Munoz receives a telephone call and text from STOP advising that the parolee's battery is dead.

2

The GPS device can be disabled by cutting off the strap or letting the battery run out. If either of those situations occurs, the parole department can only determine where the parolee's last track was.

When Munoz took over supervision of defendant, defendant had already been wearing a GPS device per the terms of his parole. Munoz discussed with defendant the need to keep his device charged.

In January 2014, Munoz received a notice that the battery on defendant's GPS had died, and Munoz again discussed with defendant the importance of keeping the device charged.

On the early morning of February 1, 2104, Munoz received another notification that defendant's device was not charged. Unable to contact defendant, Munoz reviewed defendant's tracking record and saw that his last track was on Highway 299. He believed defendant was heading home, so he contacted the Hoopa Valley Tribal Police, informing them defendant was in violation of his parole and requesting they arrest him on a parole violation if he was located. Defendant was arrested on February 3.

Munoz spoke with defendant after his arrest. Defendant told him he went to Eureka to meet a friend who was being released from the local jail. The release was delayed, however, and did not happen until around 7:00 p.m. Defendant had planned to take public transportation home, but by that time buses had stopped running, so he and his friend stopped to eat and then hitchhiked to Hoopa, arriving home late. Defendant had not brought his charger with him, and he claimed he had not felt his device vibrate. Munoz asked why defendant did not try to contact him, and defendant responded that he did not know.

At the conclusion of the hearing, the court found the parole violation true. The court ordered defendant reinstated on parole, modifying the terms to include 180 days in county jail.

This timely appeal followed.

3

In 2011, the Legislature made significant changes to the sentencing and supervision of persons convicted of felonies, shifting many responsibilities to county authorities and requiring state courts to conduct parole revocation hearings in certain cases, such as that before us. (*People v. Cruz* (2012) 207 Cal.App.4th 664, 669–672; Pen. Code, §§ 17.5, 3000.08.) Under the new laws, parole revocation is indistinguishable from probation revocation in terms of the requirements of due process. (Stats. 2012, ch. 43, § 2(b) [Legislature amended Penal Code sections 1203.2 and 3000.08 with the intent to "simultaneously incorporate the procedural due process protections held to apply to probation revocation procedures"]; *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 782; *People v. Rodriguez* (1990) 51 Cal.3d 437, 441; see also *Morrissey v. Brewer* (1972) 408 U.S. 471, 488–489 [state parole revocations require observance of certain specified minimal due process requirements, including holding an informal factual hearing, written notice of alleged parole violations, an opportunity to be heard and present witnesses, and a decision by a neutral hearing officer].)

In a probation revocation hearing, a trial court has broad discretion to determine whether to revoke probation. (*People v. Rodriguez, supra,* 51 Cal.3d at p. 443; *People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849.) "A trial court abuses its discretion by revoking probation if the probationer did not willfully violate the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 983.) A trial court's finding of a probation violation will be upheld when it is supported by substantial evidence. (*People v. Kurey, supra,* 88 Cal.App.4th at p. 848.)

Because, as noted, parole revocation is indistinguishable from probation revocation in terms of due process, defendant urges us to apply here the standard applicable a probation violation—namely, that a parole violation must be willful. And, he argues, the trial court's finding that he violated a condition of his parole by failing to charge his GPS was unsupported by substantial evidence because there was no evidence of willful conduct. Assuming that a willful violation is required, we conclude there was substantial evidence that defendant's failure to charge his GPS was willful.

4

Defendant had used the GPS device since his parole in 2010, a period exceeding three years, so there can be no doubt he knew how to charge it. When Munoz became defendant's parole officer in 2013, he discussed with defendant the importance of keeping the device charged. In January 2014, defendant failed to comply with this requirement, letting the battery die, and Munoz again counseled defendant on his obligation to charge the device. Despite this, defendant went on an excursion without his charger, a pocket-size device that was easily portable. When the excursion purportedly took longer than defendant anticipated, his GPS battery died, he failed to contact Munoz, and he offered no explanation for this failure. This evidence supports a finding that defendant's conduct was irresponsible, contumacious, and disrespectful of the court's authority—and thus willful. (See *People v. Zaring* (1992) 8 Cal.App.4th 362, 379 [reversing finding that defendant's probation violation was willful because record did not support a finding that her "conduct was the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court"].)

Defendant concedes that "[s]ubstantial evidence shows the battery on [his] GPS device ran out", but he claims the evidence "merely show[ed] that due to unexpected circumstances, [he] failed to charge his device before the charge expired." Contrary to his characterization, however, defendant did not face unforeseen circumstances that rendered him incapable of complying with the parole condition. (See *People v. Galvan, supra,* 155 Cal.App.4th at pp. 983–984 [the finding that defendant willfully failed to timely report to probation was unsupported because defendant had been immediately deported upon his release, rendering it impossible for him to comply with that condition]; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295 ["Where a probationer is unable to comply with a probation condition because of circumstances beyond his or her control and defendant's conduct was not contumacious, revoking probation and imposing a prison term are reversible error."].) Rather, it was reasonably foreseeable that defendant's return home could be delayed for a host of reasons, be it trouble with the public transportation on which he intended to rely or, as it turned out, a delay in his acquaintance's release from custody. Yet he took no steps to guard against such a

5

situation. He could have simply brought his charger with him, gone home when his friend's release was delayed, or, at the very least, contacted Munoz when his battery ran out of charge. Instead, he did nothing. Under these circumstances, we must conclude that substantial evidence supported the trial court's finding. As the court in *People v. Sorden* (2005) 36 Cal.4th 65, 72 observed when considering whether defendant's failure to register as a sex offender was willful, "life is difficult for everyone" and those who have "legally mandated" obligations must "learn to cope by taking the necessary measures to remind themselves to discharge" their duties.[1]

**DISPOSITION**

The order is affirmed.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.

---

[1] At the contested revocation hearing, the court and parties discussed whether a violation of Penal Code section 3010.10, which prohibits a registered sex offender from tampering with a GPS device, needed to be charged as a separate offense. In his opening brief, defendant argues that the section did not apply. The trial court expressly stated it was not relying on this section when imposing the 180-day jail term, and we therefore need not determine its applicability.