Filed 5/28/15  P. v. Walters CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KATHERINE WALTERS,<br><br>Defendant and Appellant. | B252904<br><br>(Los Angeles County<br>Super. Ct. No. LA059306) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard H. Kirschner, Judge.  Affirmed.

Heather Lee Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jason Tran and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The only issue before us is whether the trial court abused its discretion in revoking defendant Katherine Walters's probation upon a finding that her failure to report to the probation department in December 2012 was willful. We find that it did not and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendant was charged with second degree burglary under Penal Code section 459 (count 1) and grand theft under section 487, subdivision (a) (count 2),[2] for taking two cell phones and an MP3 player from a Fry's Electronics store. On April 26, 2010, pursuant to a plea agreement accepted by the court, defendant pleaded nolo contendere to the second degree burglary charge. The court placed defendant on three years' formal probation with conditions, including that defendant report to the probation department within 48 hours, "cooperate with the probation department in a plan for drug treatment and rehabilitation," and keep the probation officer advised of her residence and telephone numbers at all times. The court then dismissed count 2 "due to plea negotiation."

The trial court revoked defendant's probation and issued a bench warrant on January 29, 2013, when defendant failed to appear for a progress report hearing. On August 7, 2013, defendant appeared and her counsel noted that defendant had moved to Ventura County, was doing well with her drug program, had difficulties "getting down here," and wanted probation moved to Ventura County. The court reviewed a probation report dated January 29, 2013, which indicated that defendant had failed to report to the probation department in December 2012 and that there was an outstanding old bench warrant.

The court refused to transfer the probation to Ventura County before finding out what happened as to defendant's failure to report to the probation department in December 2012. The court ordered a supplemental report from the probation department,

---

[1] Defendant does not contest any proceedings leading up to the charges, or her plea agreement and resulting sentencing. We therefore limit our discussion of the facts to those relevant to the probation violation hearings.

[2] All undesignated statutory references are to the Penal Code.

2

recalled the bench warrant, released defendant on her own recognizance, and set a probation violation hearing for September 11, 2013.

At the September 11, 2013 hearing, defense counsel noted that defendant appeared personally at the probation department after the August 7, 2013 hearing, and counsel reiterated defendant's difficulty in reporting to probation in Los Angeles County when she now lived in Ventura County. Defense counsel argued that under these circumstances, this was not "willful absconding," and requested reinstatement of probation with no violation. The trial court was willing to reinstate defendant's probation with an admonition, but in light of the claim that defendant had been unable to report to the probation office, the court set the matter for a formal probation violation hearing on October 9, 2013, limited to the issue of whether defendant had been physically unable to report in December 2012. The court further ordered that a probation officer be present at that hearing. Defense counsel asked that the entire probation file be brought to the hearing, and the court observed that defense counsel could subpoena the file.

The October 9, 2013 hearing was before a different trial judge. At the beginning of the hearing, the prosecutor described the probation report as "a little vague" but that it indicated that defendant last reported to the probation department on August 7, 2013, and although she had reported "a total of 13 times," she was "not reporting consistently." Defense counsel objected to proceeding because he had not yet received the entire probation file. The court stated that it would go forward with the hearing because the probation officer was present in court, but would leave the hearing open so that defense counsel could review the file when he received it. Apparently at least part of the file was available at the hearing because the court made copies of exhibits from that file at the hearing for defense counsel.

Three witnesses testified at the October 9, 2013 hearing: Supervising Probation Officer Matthew Himelfarb (Himelfarb), Deputy Probation Officer Jeffrey Levalley (Levalley), and defendant.

Himelfarb had been defendant's probation officer until January 2013. He testified that defendant did not have to appear personally at the probation department. Although

3

defendant was required to report every month, she could report to any probation office that had a kiosk machine; reporting constituted putting one's hand in the kiosk machine and answering some questions. "[S]he'll get credit any time during the month that she reports as long as she reports to the machine."

Himelfarb further stated that the department's computer system accessed the records created by the "kiosk reporting system" at the time a defendant reports at a kiosk, and that these records are prepared in the ordinary course of business. He brought printouts generated by the computer system to the hearing. He further testified that the closest probation offices to Ventura County were in East San Fernando, Valencia, and Antelope Valley, perhaps even Santa Monica. Upon cross-examination, he stated that the probation records did not indicate whether "Probation had made a determination as to her financial condition," which defense counsel argued was relevant to defendant's ability to travel to the latter probation offices.

Levalley testified that the probation department relies on these kinds of records in supervising probationers, defendant had not been reporting consistently, and defendant would report at a kiosk "when she did report." Over defense counsel's relevance and hearsay objections, Levalley testified about exhibits 1-A, 1-B, and 1-C. These exhibits comprised the three separate pages of a document marked as exhibit 1, which was a computer printout regarding defendant from data generated by the kiosk reporting system described above.

Exhibits 1-A, 1-B, and 1-C had respectively eight, ten, and ten entries. Levalley testified that exhibit 1-C reflected that defendant did not report to a probation department kiosk at all in December 2012.

Levalley also testified about a "chrono" marked as exhibit 2 that he "pulled up for the record" for the "November 15th and January 18th of 2012, 2013" time period. Exhibit 2 was generated in the ordinary course of business through "the same automated probation system that you do for the other — for any other computer record, and you can access it that way." The information was "inputted either by the clerks or the supervising probation officer or anyone that has — anyone that would have any contact with the

4

matter" and the entries would have been made close to the time recorded in the documents. He stated that exhibit 2 showed that except for a letter of completion from her rehabilitation center, "there is no entry of her reporting or making a phone call or any contact with Probation during that December period."

Levalley's report, exhibit 3, was admitted into evidence, as were exhibits 1-A, 1-B, 1-C and 2; the court again overruled defense counsel's hearsay and relevance objections. Exhibit 1-A indicated that defendant was a "no show" on November 1, 2010, and September 1, 2010, in addition to three entries marked "successful" and one marked "conditional." Exhibit 1-B reflected that defendant was a "no show" on December 1, 2010, January 1, 2011, May 1, 2011, and August 1, 2011, in addition to four "successful" entries and two "calendared/desertion" entries in other months. Exhibit 1-C indicated "no show" on October 1, 2011, July 1, 2012; August 1, 2012, and December 1, 2012, as well as two "successful" entries, two "calendared/desertion" entries, and one "Kiosk-incomplete" entry. Exhibit 3 recited that defendant (1) "last reported to probation on 8-7-13" and "to date," "has reported a total of 13 time(s)"; (2) had not made payments, with a balance of $3,798 due in fees; and (3) completed her drug program at the Antelope Valley Rehabilitation Center. The report recommended that defendant be found in violation of probation and reinstated on probation with 30 additional days in custody "to address her various violations."

The trial court issued a body attachment for the custodian of records of defendant's probation department file because the whole file had not been brought to court, and continued the hearing so that the file would be available to defense counsel at the next hearing, which the court set for October 24, 2013. The court then proceeded to hear testimony from defendant.

Defendant testified that from May 2012 to November 2012, she lived in Acton at the Antelope Valley Rehabilitation Center, and that she had notified the probation department about her Acton address. When living at the rehabilitation center, she would report to the Van Nuys location of the probation department. After she was released from the rehabilitation center, she moved in with her mother, who lives in Ventura. Appellant

5

testified that "shortly" after she was released from rehabilitation, she notified the probation department of her new address in Ventura by telephone; she spoke to a woman receptionist because Himelfarb was "unavailable." She further testified about her efforts to transfer her probation to Ventura County and that the probation department told her that the process would take a long time.

Defendant stated that she had no money or job, had a suspended driver's license, and helped out her mother around the house in lieu of paying rent. When she got a part-time job at Starbucks in January 2013, she gave her " barely" $100 paycheck to her mother for rent, but she lost that job in April 2013.

Defendant testified that she had also since divorced so that her ex-husband was no longer available to drive her to the probation department, and she did not want to have contact with him because he was part of the problem that put her in the rehabilitation center. The same was true of her former friends, and her mother could not take off of work to drive her to a kiosk. She admitted, however, that a friend drove her to court that day. She also testified that she "did not have the means" to report in 2013. She admitted not contacting the public defender's office because she did not know who her attorney was.

She stated that she could not afford a taxicab ride from Ventura to the probation department offices in Los Angeles County and that although she could take a train to Santa Clarita, there was no kiosk there. Her testimony was somewhat unclear as to whether she could report in person in Santa Clarita. She conceded that she did not report to the probation department at all from December 2012 to August 2013.

The court continued the October 24, 2013 hearing to November 7, 2013, because defense counsel had still not received the probation department file through no fault of his own. At the November 7, 2013 hearing, at defendant's request, five additional documents from the probation department file were admitted into evidence.[3] Given

---

[3] These exhibits included an affidavit from the custodian of records; a letter of completion from defendant's drug treatment center; a "report slip" dated October 9, 2013; a list of kiosk stations; and a "chrono information data" sheet dated October 15,

6

defendant's admission at the October 9, 2013 hearing that she did not report in December 2012 to the probation department, the only question before the trial court was whether that failure was willful.

Defendant argued that her failure to report in December 2012 was caused by her inability to pay for transportation to get to a reporting kiosk since she had moved to Ventura County. The prosecutor argued that based on the testimony about the probation report exhibits, prior to December 2012 defendant had failed to report several times in 2010 and 2011, and taken in combination with her failure to notify the probation officer about her asserted inability to report, demonstrated that defendant's failure to report in December 2012 was willful.

The court acknowledged defendant's successful completion of her drug program "to her credit." The court also noted that exhibit 1-A showed that defendant did not report to the kiosk on December 1, 2010, January 1, 2011, May 1, 2011, and August 1, 2011.[4] The court found that defendant's failure to report in December 2012 was willful because it was "part of a pattern" and not "a single violation." "It was a decision that she made in this case not to report in December of 2012." "[R]ather than taking the bus or the train or seeking a ride from a friend, she chose not to report."

The court found defendant in violation of probation, but reinstated defendant on the same terms and conditions of her prior probation. The court denied defense counsel's request for conversion of defendant's probation into summary, "non-reporting probation" because defendant did "not make progress in terms of [her] responsibility and obligation to report." The court also acknowledged defendant's recovery and stated that he wanted to see defendant succeed. The court found that defendant still needed "the added incentive to know that you're still on probation and another violation may have consequences."

_____

2013, reflecting defendant's request to be transferred to Ventura County and that at the time, defendant was living in a battered women's shelter in Oxnard.

[4] In fact, that information is in exhibit 1-B and not exhibit 1-A.

7

Defendant filed an appeal from "the probation violation hearing ruling and judgment rendered on November 7, 2013 . . . ."**5**

## DISCUSSION

Defendant appears to be making two arguments on appeal: (1) the trial court abused its discretion in admitting evidence of probation reports indicating prior failures to report because that evidence was irrelevant without first finding that each of those prior failures was willful;**6** and (2) substantial evidence did not support the trial court's finding that defendant's admitted failure to report to probation in December 2012 was willful.

"We review a trial court's evidentiary rulings for abuse of discretion. (*City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900.) . . . Discretion is abused only when . . . the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.' [Citation.] There must be a showing of a clear case of abuse and miscarriage of justice in order to warrant a reversal. [Citation.] A trial court will abuse its discretion by action that is arbitrary or '"that transgresses the confines of the applicable principles of law."' [Citations.]" (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.)

The parties agree that in order to revoke probation, the trial court must find that the "'probationer's conduct constituted a willful violation of the terms and conditions of probation.'" (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295 (*Cervantes*), quoting *People v. Galvan* (2007) 155 Cal.App.4th 978.) Failure to comply with a term or condition of probation is not willful if it was caused by circumstances beyond a defendant's control and defendant's conduct was not "contumacious." (*Cervantes*, at p. 295.)

---

**5** The November 7, 2013 minute order also includes denial of a motion to terminate defendant's probation.

We observe that if judgment is pronounced and entered, and probation is granted, and thereafter an order is made revoking probation, the latter order is appealable. (§ 1237, subd. (b); *People v. Robinson* (1954) 43 Cal.2d 143, 145.)

**6** Appellant appears to have abandoned on appeal the hearsay objection she asserted below.

8

Defendant cites no authority for the proposition that in order to rely on a pattern of failures to report, the prosecutor had to demonstrate that each such "no show" was willful. To the contrary, evidence of prior no-shows was relevant to rebut defendant's contention that her non-reporting in December 2012 was due to circumstances beyond her control.[7]

In reviewing for substantial evidence we do not reweigh the evidence. Instead, we determine whether, based on the whole record, "there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848.) "In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the judgment. Similarly, all conflicting evidence will be resolved in favor of the decision." (*Id.* at pp. 848–849, fns. omitted.) There was substantial evidence in addition to the pattern of no-shows to support the trial court's finding that defendant's failure to report in December 2012 was willful and not the product of circumstances beyond defendant's control. Levalley testified that there was no record of defendant's contacting the department to notify it of her inability to afford transportation to offices in Los Angeles County. The trial court apparently credited this testimony, and not defendant's contrary assertion that she had contacted a female receptionist when Himelfarb was unavailable.

Although defendant testified that she had cut ties with all friends who could have driven her, she admitted that a friend had driven her to court that day and that she had resumed reporting despite her asserted transportation difficulties. There was no testimony that the kiosks were unavailable at hours when defendant's mother was not at work. Defendant did not explain why she could not take affordable public transportation

---

[7] Evidence Code section 210 defines "'Relevant evidence'" as "evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

like buses in December 2012, when she had free time because she was not then employed.**8**

It is not our role to second-guess the trial court. Where, as here, substantial evidence supported the trial court's finding that defendant's failure to report in December 2012 was willful, and defendant's relevance objection to the probation report exhibits was unfounded, defendant has failed to demonstrate that the trial court abused its discretion in revoking defendant's probation and reinstating it on the same terms and conditions.

## DISPOSITION

The order revoking and reinstating defendant's probation on the same terms and conditions is affirmed.

NOT TO BE PUBLISHED.


BENDIX, J.*

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

---

**8** These facts readily distinguish the case before us from defendant's principal authority, *People v. Zaring* (1992) 8 Cal.App.4th 362, where the appellate court held that the trial court abused its discretion in revoking probation when the trial court's finding of willfulness was based on the defendant's being 22 minutes late for a hearing because of childcare responsibilities. (*Id*. at p. 379.)

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.