Filed 6/30/16  P. v. Rosser CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C079958 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F6434) |
| v. | |
| JUSTIN LEE ROSSER, | |
| Defendant and Appellant. | |

Defendant Justin Lee Rosser appeals from a probation revocation.  He argues (1) insufficient evidence supported the finding he willfully violated his probation terms; (2) the trial court violated his right to equal protection and due process by conditioning his freedom on his ability to pay; and (3) imposition of an $80 court security fee was error.  The People agree with the third contention but challenge the remainder.  We agree with the People.  We will correct the fee and affirm the remainder of the judgment.

## I.  BACKGROUND

In 2009, defendant pleaded guilty to unlawful sexual intercourse (Pen. Code, § 261.5, subd. (c))[1] and furnishing marijuana to a minor 14 years old or older (Health &

---

[1] Undesignated statutory references are to the Penal Code.

1

Saf. Code, § 11361, subd. (b)). He was ordered to serve 180 days in jail and placed on probation for three years. He was also ordered to complete a sex offender treatment program and pay a $60 court security fee (§ 1465.8, subd. (a)(1)).

In August 2011, following a petition to revoke probation, defendant admitted to a probation violation for using marijuana and failing to report a police contact to his probation officer. Probation was revoked and reinstated, and he was ordered to serve 90 days in jail.

In September 2012, another petition to revoke probation was filed (the one at issue here). It alleged defendant had failed to submit monthly reports; advise probation of his residence, address, and phone number; and complete a sex offender treatment program.[2] The court revoked probation and issued a bench warrant. Defendant was on abscond status until mid-2015.

In June 2015, a contested revocation hearing was held.

A.   *Defendant's Failure to Submit Reports and to Advise Probation of His Address and Phone Number*

At the hearing, defendant's probation officer testified. He explained probationers must submit monthly reports, providing information including phone number and address changes. Defendant last submitted a report in March 2012.

About that time, probation developed a telephone reporting system, allowing probationers to report by phone. Defendant was enrolled in the system and was told he no longer had to provide written reports; he only needed to report by phone. But defendant never called to set up his phone reporting account. The probation officer last saw defendant in early May 2012 for a urine test.

---

[2] Allegations defendant tested positive for THC and failed to report an arrest were dismissed by the prosecution. A charge of elder abuse was also dismissed by the prosecution for insufficient evidence.

When defendant stopped reporting, his probation officer attempted to contact him. A letter sent to the address defendant provided was returned, undeliverable. Two calls placed in June were also unsuccessful; the number defendant provided had been disconnected.

Defendant testified at the hearing, offering several explanations for his failure to submit monthly reports. When his probation officer told him he no longer had to come in and could report by phone, he told his probation officer he could not afford phone reporting, explaining: "I would rather him let me keep coming back in instead of paying more money for something I couldn't afford." His probation officer said they would figure it out. But, according to defendant, his probation officer did not appear to care whether defendant had the funds; the officer told him, "do what you have to do." Defendant also testified: "To my knowledge, I was trying to call on the phone thing."

Defendant also testified he thought he did not have to report because he was approaching the end of his probation. He explained that on a prior probation term, when he was nearing the end of probation, he was told he no longer had to report. He thought the same situation applied to this probation (his probation was due to finish in December 2012).

As to the address and phone number he provided, defendant testified he had been homeless: He had been fired from his job when he got sick. He told probation he was homeless and was told he still had to provide an address, so he gave his mother's address. When his mother moved, he gave another address. The undelivered letter was sent to his mother's address. Similarly, the phone number defendant provided had been his before he became homeless, but his phone was disconnected when he could no longer afford it.

B.    *Defendant's Failure to Complete a Sex Offender Treatment Program*

A therapist working for defendant's sex offender treatment program testified that defendant stopped attending sessions in May 2012. Around that time, defendant called to tell the therapist he had been employed at a pipe company, which prevented him from

attending group sessions. The therapist offered him individual sessions, but he never showed—and was never seen at the program again. The therapist testified individual meetings are "more costly" than group meetings.

The therapist also testified that defendant was officially suspended from the program in June 2012, both for failure to attend and failure to pay fees. When defendant left the program, his balance was $2,070. The weekly group sessions are $50 each. When defendant said he could not pay, the program arranged for him to make $5 payments. The therapist testified the program would not terminate someone for inability to pay, if the probationer was "working with" them.

The probation officer testified that probation would be notified if defendant missed treatment dates or failed to comply with sanctions. Probation had received notifications "multiple" times throughout that year. Defendant had also shown a "history of difficulties" in the treatment program. In 2011, he had been suspended from treatment and had been placed on probation from the program for 90 days for "non-compliance" and for being significantly behind in payments.

Defendant testified that he stopped attending sex offender treatment because he was told he had to leave if he could not pay. He understood that was the only reason he was terminated. He testified that after he was fired from his job, he continued to seek work to pay the fees, eventually starting his own business. He testified that he would have continued treatment if he had the money.

C.    *The Trial Court's Findings*

The trial court found the allegations true, explaining: "Well, [defendant], you make a lot of excuses but you weren't taken off probation. You still have these things to complete. You have a lot of excuses why you didn't do them, but you didn't bring them up to the right people or make enough effort. I think you could have made more of an effort to at least show up at Probation.

4

"They said you didn't have to, but that doesn't mean you couldn't. And you didn't show up or send anything by mail or report in any way. And I don't believe you couldn't have done something.

"Now, it sounds like there may have been a fee to sign up for this telephone reporting system. I don't know. We didn't get into details on that. But again, I think you just said, well, I can't pay it so I don't have to. And I think that was your attitude. Just that you didn't need to and I think [that] was the wrong attitude and you needed to make an effort."

The court imposed an aggregate term of three years eight months. The clerk's minutes and abstract of judgment also reflect that an $80 court security fee was imposed—though no mention of the fee appears in the hearing transcript.

## II. DISCUSSION

### A. *Sufficient Evidence Supports the Probation Violation Finding*

On appeal, defendant challenges the finding of a parole violation arguing there was insufficient evidence he willfully violated his probation conditions. We disagree.

A court may, in the interest of justice, revoke probation if it has reason to believe the defendant has violated any condition of probation. (§ 1203.2; *People v. Urke* (2011) 197 Cal.App.4th 766, 772.) Proof of a violation need be made only by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441.) Revocation lies within the trial court's broad discretion. (*People v. Self* (1991) 233 Cal.App.3d 414, 417 (*Self*).) We will resolve all conflicting evidence in favor of the decision. (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849.) And we will not disturb the trial court's finding absent an abuse of discretion. (*Self, supra,* at p. 417.) But revocation is an abuse of discretion where the probationer did not willfully violate his probation conditions. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 378-379 (*Zaring*).)

Here, defendant offered several reasons for failing to report to probation and attend sex offender treatment. But the trial court was not required to accept his testimony

5

as true. Rather, it could credit the testimony of the probation officer and therapist, indicating defendant's noncompliance was willful.

That testimony indicated defendant willfully failed to provide monthly reports and apprise probation of his address and phone number. Defendant never called to set up a telephone reporting account, after he was told to report by phone. Nor did he attempt to report by other means. To the contrary, he absconded until 2015. And the fact that defendant contacted probation in early May 2012 for a urine test, suggests he had opportunities to report following his last report in March 2012.

Moreover, even crediting defendant's testimony would do little to advance his case: Defendant testified that he stopped reporting because he assumed he no longer had to report because he was approaching the end of his probation.

So too was there substantial evidence of a willful failure to complete his sex offender treatment. The therapist testified defendant was not terminated solely for failure to pay and that the program would not terminate someone for inability to pay, if the person was "working with" them. And there was evidence the program attempted to accommodate defendant: Arrangements were made to allow him to make $5 payments, rather than $50 per session. When defendant notified the program that his job prevented him from attending regular sessions, he was offered individual sessions (albeit more costly sessions). Defendant never showed. The probation officer also testified to receiving multiple notifications of program violations, and that defendant had "a history of difficulties in the program."

Moreover, defendant's reliance on *Zaring* to show his violation was not willful is inapposite. In *Zaring*, probation was revoked when Zaring was 22 minutes late to a court hearing because she unexpectedly had to take her children to school. (*Zaring, supra,* 8 Cal.App.4th at p. 376.) In finding the revocation an abuse of discretion, the appellate court noted the trial court had accepted Zaring's explanation for being late, yet still found a willful violation of probation. (*Id*. at p. 377.) This was error because Zaring had been

6

confronted with "a last minute unforeseen circumstance" and her conduct was not the result of "irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court." (*Id.* at p. 379.)  Here, by contrast, defendant's violations arise not from a single unforeseen circumstance but a pattern of failing to do what was required of him.[3]

Substantial evidence supports the finding of a willful probation violation.

B.      *Defendant's Right to Equal Protection and Due Process Was Not Violated*

Defendant also contends the trial court violated his right to equal protection and due process in conditioning probation on his ability to pay.  He argues the court failed to inquire into his bona fide ability to pay costs associated with his probation terms, noting the court stated:  "Now, it sounds like there may have been a fee to sign up for this telephone reporting system.  I don't know.  We didn't get into the details on that.  But again, I think you just said, well, I can't pay it so I don't have to."  Defendant argues remand is required to permit an inquiry into his bona fide ability to pay.  We disagree.

When revoking probation for failure to pay a fine or restitution, the sentencing court must inquire into the reasons for failing to pay.  (*Bearden v. Georgia* (1983) 461 U.S. 660, 672-673 [76 L.Ed.2d 221, 233] (*Bearden*).)  "If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay," revocation is permitted.  (*Id.* at p. 672.)  But if the defendant could not pay despite bona fide efforts to do so, the court must consider alternatives to imprisonment.  (*Ibid.*)  In *Bearden*, the court reversed a probation revocation where the

---

[3] Two other cases defendant cites also involve a single unforeseen circumstance leading to the violation.  (See *People v. Galvan* (2007) 155 Cal.App.4th 978, 983 [deportation prevented the defendant from reporting to probation within 24 hours of his release]; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 293 [the defendant could not appear for 30-day review hearing because he was in the custody of immigration authorities].)

trial court made no finding that Bearden had failed to make sufficient bona fide efforts to find work, nor would the record support such a finding. (*Id*. at pp. 673-674.)

Here, defendant's probation was not revoked for failure to pay a fine or restitution; it was revoked for failure to report to probation and complete sex offender training. To the extent those failures are attributable to the failure to pay fees, the trial court expressly found defendant had failed to make sufficient bona fide efforts to either acquire the resources to pay or make alternative arrangements: "You have a lot of excuses . . . , but you didn't bring them up to the right people or make enough effort. I think you could have made more of an effort to at least show up at Probation." That finding was well supported. The record reflects a pattern of defendant both failing to seek accommodations when needed and failing to take advantage of an accommodation when offered.

The trial court's finding of a probation violation did not violate defendant's right to equal protection and due process.

C.      *Imposition of an $80 Court Security Fee Was Error*

Finally, defendant challenges imposition of an $80 court security fee at his 2015 sentencing. The People concede the error, and we agree.

In December 2009, the court imposed a $60 court security fee ($30 for each of defendant's two convictions). At the time, section 1465.8, subdivision (a)(1) mandated a $30 court security fee for every criminal conviction "to ensure and maintain adequate funding for court security." (Former § 1465.8, subd. (a)(1), Stats. 2009-2010, 4th Ex. Sess., ch. 22, § 29.)

At the December 2015 sentencing, the trial court did not order an additional court security fee. Yet both the clerk's minutes and the abstract of judgment reflect the imposition of an $80 security fee (in 2015, the security fee was $40). (§ 1465.8, subd. (a)(1).)

8

We will therefore order the abstract of judgment be corrected to reflect only the $60 court security fee imposed at the 2009 sentencing. (See *People v. Scott* (2012) 203 Cal.App.4th 1303, 1324 [In a criminal case, the oral pronouncement of sentence constitutes the judgment; a minute order that diverges from the proceedings is presumed to be the product of clerical error].)

### III. DISPOSITION

The trial court is ordered to prepare a corrected abstract of judgment, consistent with this opinion, reflecting the imposition of the original $60 court security fee. The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

BLEASE, Acting P. J.

/S/

BUTZ, J.

9