Filed 8/2/16  P. v. Anaya CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B266965 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA298916) |
| v. | |
| SABINO DIAZ ANAYA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dorothy B. Reyes, Judge.  Affirmed.

Donna Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Ilana Herscovitz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2005, appellant Sabino Diaz Anaya was charged with two felony counts of lewd acts upon a child under 14 years of age (Pen. Code, § 288, subd. (a)).[1]  Appellant pled nolo contendere to count 1, and the trial court dismissed count 2.  In June 2006, the court suspended imposition of sentence and placed appellant on formal probation for five years.  Appellant was immediately taken into federal custody and deported to Mexico in the fall of 2006.  The trial court revoked his probation and issued a bench warrant.  Nine years later in 2015, he was arrested trying to reenter the United States.  Following a formal probation violation hearing, the court found appellant in violation of probation and sentenced him to three years in state prison.

Appellant contends the trial court abused its discretion in terminating probation because he did not willingly violate the terms of his probation, having been deported.  We affirm.

## BACKGROUND

### Factual History

On or about July 18, 2005, appellant visited the home of seven-year-old Tiffany R. (Tiffany), who lived with her mother and grandmother.  He had known her family for more than 15 years.  After her mother left for work, he went into her bedroom, sat on her bed, touched her face and feet, put his bare hands on her vagina, and played with his penis.  Her cousin, 10-year-old A.L., told her own mother that appellant had also touched her vagina once under her clothing.

Appellant was 56 years old at the time of the sexual assaults.  He had been a pipe cutter for 25 years, earned $10.50 an hour, and paid $500 in rent.

### Procedural History

On March 3, 2006, appellant entered a plea of nolo contendere to count 1 (lewd acts with a child, Tiffany), and the trial court dismissed count 2 (lewd acts with a child, A.L.).  The court advised appellant that if he was not a United States citizen, the conviction would result in deportation and exclusion.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

On June 28, 2006, the trial court sentenced appellant to five years of formal probation, and ordered him to serve 365 days in county jail. Appellant received 180 days of presentence custody credit, consisting of 120 days in actual custody and 60 days of good time/work time credit. The terms and conditions of probation included the following: (1) pay a $20 court security assessment, a $200 restitution fine, a $200 sex offender fine plus additional penalties, the cost of probation services in an amount to be determined by the probation department, and a $200 probation revocation restitution fine, which was stayed; (2) obey all laws and orders of the court; (3) obey all rules and regulations of the probation department; (4) cooperate with the probation officer in a plan for one year of sex-offender counseling; (5) keep the probation officer advised of residence, work and home telephone numbers at all times; (6) report to the probation officer within 48 hours; and (7) register as a convicted sex offender. As to the reporting requirement, the court told appellant that the office is "located here in this building on the third floor in room 3-516." Appellant acknowledged that he understood and accepted all the probation conditions and agreed to abide by them.

Before serving his sentence, appellant was immediately taken into custody by the Department of Homeland Security and deported to Mexico. Appellant never reported to probation. On November 1, 2006, the trial court revoked probation and issued a bench warrant.

On July 12, 2015, appellant was arrested on the bench warrant at the port of entry. At a hearing on July 15, 2015, the trial court set a preprobation violation hearing setting conference for August 6, 2015, and ordered a supplemental probation report. At the August 6, 2015 hearing, the court stated that it had reviewed the case file and the supplemental probation report. The court stated that appellant "has never reported to probation, has never registered as a sex offender, and has never attended his sex offender classes or enrolled." The court indicated it would sentence appellant to the low term of three years in state prison. Appellant requested a formal probation hearing.

At the August 27, 2015 formal probation violation hearing, the trial court again stated that it had reviewed the supplemental probation officer's report. Per the

3

supplemental report, the court noted that appellant had never: (1) reported to probation since being sentenced on this case in 2006; (2) completed the mandatory sex offender registration; (3) enrolled or participated in the sex-offender treatment program; or (4) paid the fines and fees imposed in this case. Appellant was present in custody, but did not testify.

Deputy Probation Officer James Adkins testified for the prosecution. He stated that appellant had never reported to his probation officer or paid any fees or fines. Deputy Adkins had no information that appellant had registered as a sex offender or that appellant had provided anything to the probation department regarding sex-offender class enrollment. Deputy Adkins had prepared the supplemental probation report, which stated that appellant "deserted his probation." Deputy Adkins did not believe that appellant was suitable for probation supervision because he was convicted of a serious sex offense, and is neither a United States citizen nor a desirable member of the community.

Ana G. (Ana), appellant's adult daughter, testified for the defense. After his deportation and prior to his arrest, appellant resided in Tecate, Mexico. He did not return to California between his deportation and arrest. "[H]e got deported and he knew he wasn't allowed to come back to the United States."

Ana lived in San Diego with her mother (appellant's wife), who had been ill for a long time. Ana frequently contacted appellant to give him updates about her mother's medical condition. Appellant's wife died on July 1, 2015. Ana spoke with appellant about the funeral arrangements and tried to make arrangements for him to attend. Appellant intended "just to attend the funeral and go back" to Mexico. Appellant went to the consulate in Tijuana, where he was told to "just bring a letter from the mortuary" stating the date and time of the funeral service. Ana obtained a letter from the mortuary that asked for "professional courtesy" so that he could enter the United States for the funeral.

On cross-examination, Ana agreed with the prosecutor that "from the time [appellant] was deported . . . [up until] he tried to make reentry," he "had never done anything . . . as far as clearing up his obligations here in Southern California."

4

After argument, the trial court found that "for nine plus years [appellant] did absolutely nothing," toward meeting his legal obligations. The court found that appellant had violated his probation and that his violation was "willful." Appellant was sentenced to three years in state prison, with credit for 455 days. This appeal followed.

## DISCUSSION

Section 1203.2, subdivision (a) authorizes courts to revoke and terminate probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation, . . ." Trial courts have "great discretion" in determining whether to revoke probation. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445.) Reviewing courts give "great deference" to the trial court's decision, "bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) "'[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . .'" (*People v. Rodriguez, supra*, at p. 443.) "And the burden of demonstrating an abuse of the trial court's discretion rests squarely on the defendant. [Citation.]" (*People v. Urke, supra*, at p. 773.)

Where the trial court has made factual findings, we apply the substantial evidence test. (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848–849.) The facts supporting revocation of probation may be proved by a preponderance of the evidence. (*People v. Rodriguez, supra,* 51 Cal.3d at p. 439.) The evidence must support a conclusion that the probationer's conduct constituted a willful violation of the terms and conditions of probation. (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295 (*Cervantes*).) "Where a probationer is unable to comply with a probation condition because of circumstances beyond his or her control and defendant's conduct was not contumacious, revoking probation and imposing a prison term are reversible error." (*Ibid.*)

5

Appellant challenges the trial court's findings that his failure to report to probation, participate in sex-offender treatment, register as a sex offender, and pay his fines and fees were willful violations of his probation. He claims that his deportation rendered it impossible for him to meet the terms of his probation. He further claims that the trial court was required to make an express finding on his current ability to pay.

We are not persuaded. Appellant's deportation did not prevent him from contacting the probation department by telephone, letter, third party (e.g., his attorney) or otherwise to (at the very least) notify the department that he had been deported and provide his current address and contact information. Appellant's frequent communications with his adult daughter in San Diego and his ability to work with her in obtaining a letter from the mortuary in California show that he had the means to make such contact with the probation department. On these facts, the trial court reasonably concluded that appellant's failure to report to probation was willful.

Additionally, the trial court could reasonably find that appellant willfully abandoned his obligation with respect to the sex-offender counseling. Appellant's probation required him to "[c]ooperate with the probation officer" in a plan for one year of sex-offender counseling. (Italics added.) Again, this probation term would have required some kind of contact between appellant and his probation officer. Deputy Adkins testified that it was appellant's responsibility to inform the probation officer about the status of his classes. Absent evidence to the contrary, the trial court was not required to find that appellant had no ability to contact his probation officer.

Likewise, substantial evidence supports the trial court's finding that appellant failed to register as a sex offender. Deputy Adkins had no documentation to show that appellant had registered. Appellant was present during the probation revocation hearing and could have presented evidence that he did register. The trial court reasonably found that appellant "did absolutely nothing" toward his obligations during his nine-year absence from California.

Appellant's authorities do not assist him. In *People v. Galvan* (2007) 155 Cal.App.4th 978 (*Galvan*), one condition of the defendant's probation required him to

6

report to his probation officer within 24 hours of his release from jail, and another required him to report to his probation officer within 24 hours if he returned to the United States after leaving and present documentation proving his entry was legal. (*Id*. at pp. 980–981.) The defendant was deported upon his release from jail, subsequently reentered the country, and was arrested. The trial court revoked his probation both for failing to report to his probation officer within 24 hours upon his release from jail and within 24 hours of his return to the United States. (*Id*. at p. 982.) This was an abuse of discretion. (*Id*. at pp. 980, 983–984.) According to the reviewing court, a reasonable person would have understood the probation conditions to require a personal appearance at the probation department. (*Id*. at p. 985.) Because the defendant's immediate deportation made it impossible to report to the probation officer in person within 24 hours of his release from jail, the reviewing court concluded that his failure to report was not willful. (*Id*. at pp. 983–984, citing *People v. Zaring* (1992) 8 Cal.App.4th 362, 378–379.)

In *Cervantes, supra,* 175 Cal.App.4th 291, the trial court granted the defendant probation with the requirement that he personally return to court after 30 days for a probation review hearing. (*Id*. at p. 293.) The defendant was released from jail and immediately transferred to the custody of immigration authorities. (*Id*. at pp. 293–294.) While acknowledging the defendant did "nothing wrong" (*id*. at p. 295), the trial court revoked probation because the defendant's immigration status made him "no longer suitable for probation" (*id*. at p. 294). The reviewing court reversed, finding the trial court erred in revoking probation "solely because of his immigration status." (*Id*. at p. 296.)

*Galvan* and *Cervantes* are distinguishable. Unlike *Galvan*, where the only probation violation was the defendant's failure to report to probation in person, appellant was required not only to "report" to probation, but also to keep the probation officer "advised" of his residence and telephone numbers, to "cooperate" with the probation officer in a plan to attend sex-offender counseling, and to register as a sex offender. Even if appellant's immediate deportation prevented him from physically appearing before his probation officer, it did not prevent him from communicating with the probation

7

department by other means regarding his obligations. And unlike *Cervantes*, appellant was not ordered to personally appear in court for a review hearing. Nor did the trial court here revoke appellant's probation solely because of his illegal status. Rather, the trial court reasonably concluded that appellant willfully ignored the terms of his probation. Unlike the defendant in *Cervantes,* who did "nothing wrong," appellant was contumacious and the trial court properly revoked his probation.

Appellant further contends that the trial court erred in finding that he willfully violated probation by failing to pay the fines and fees he was ordered, and agreed, to pay. According to appellant, the court could not make this finding in the absence of any evidence of appellant's current ability to pay. This contention is without merit.

Section 1203.2 does not require the trial court to expressly determine appellant's ability to pay fines and fees. Rather, the determination of ability to pay applies only to restitution. (§ 1203.2, subd. (a) ["Supervision shall not be revoked for failure of a person to make restitution imposed as a condition of supervision unless the court determines that the defendant has willfully failed to pay and has the ability to pay"].) It is well understood that this statutory provision applies to the payment of victim restitution. (See e.g., *People v. Ryan* (1988) 203 Cal.App.3d 189; *People v. Self* (1991) 233 Cal.App.3d 414; *People v. Campbell* (1994) 21 Cal.App.4th 825; *People v. Sem* (2014) 229 Cal.App.4th 1176.)

When appellant entered his plea, the prosecution did not seek victim restitution and the trial court did not impose it as a probation condition. Appellant was only ordered to pay statutory fines and penalties: $20 court security assessment (§ 1465.8, subd. (a)(1)); $200 restitution fine (§ 1202.4, subd. (b)—note that subd. (c) specifically states: "A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine"); $200 sex offense fine (§ 290.3, subd. (a)); court penalty (§ 1464, subd. (a)); government penalty (Gov. Code, § 76000, subd. (a); and $200 probation revocation restitution fine, which was stayed. As to these fines and fees, the trial court was not required to make a determination as to appellant's ability to pay.

8

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
               ASHMANN-GERST


We concur:


_____, J.
      CHAVEZ


_____, J.
      HOFFSTADT

9