Filed 12/28/15  P. v. Aguerrebere CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ANGEL AGUERREBERE,<br><br>    Defendant and Appellant. | A144065<br><br>(Marin County<br>Super. Ct. No. SC180115B) |

Defendant Miguel Aguerrebere appeals from an order revoking his probation based on the trial court's determination that he failed to enter a residential treatment program as required under his terms of probation.  He concedes that he failed to enter such a program, but he argues that the failure was not willful because his acceptance into a program was delayed due to a medical condition he has.  He also argues that the trial court abused its discretion in not reinstating his probation because, by the date of sentencing, he had been accepted into a program.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

This appeal arises from an order that revoked Aguerrebere's probation for a second time, so we begin by briefly reviewing Aguerrebere's somewhat convoluted probation history.  Aguerrebere was originally placed on probation after he attacked an acquaintance in April 2012.  He was charged with felony counts of residential burglary,

1

assault by means likely to cause great bodily injury, and witness dissuasion.[1]  He pleaded guilty to the assault and witness-dissuasion counts, and the trial court dismissed the burglary count on the People's motion.  At a September 2012 sentencing hearing, the court suspended imposition of the sentence, placed Aguerrebere on supervised probation for a period of three years, and ordered him to serve some time in county jail.[2]  As a result, Aguerrebere avoided a sentence to state prison.

Among the probation conditions was one requiring Aguerrebere "to participate in any treatment/therapy/counseling program, including residential, as directed by the probation officer" to address his admitted substance abuse problem.  Although Aguerrebere was released from county jail by February 2013, there is no indication in the record that his probation officer directed him to participate in a treatment program during the first year of his probation.

In November 2013, a petition to revoke probation was filed because Aguerrebere tested positive for drugs, failed to report an address change, and failed to submit to a search of his cell phone.  A second petition was filed after he again tested positive for drugs and failed to report for subsequent tests.

In late January 2014, Aguerrebere admitted to the allegations in both petitions.  The trial court revoked his probation for the first time, but it then reinstated his probation under its original terms and conditions.  The reinstatement had the effect of allowing Aguerrebere, once again, to avoid serving time in state prison.  But, as it had done when it first placed Aguerrebere on probation, the court again ordered him to serve some time in county jail.  When it did so, it indicated that he had the option to "apply for a residential treatment program, and if one is located, [he] can parole into that program

---

[1] The charges were brought under Penal Code sections 459 (burglary), 245, subdivision (a)(4) (assault), and 136.1, subdivision (b)(1) (witness dissuasion).  All further statutory references are to the Penal Code.

[2] The trial court later noted that Aguerrebere "was technically not eligible for probation" under section 1203, subdivision (e)(4), which applies to defendants with two previous felony convictions, but that "because of the negotiated disposition [it] did give [him] a chance on probation."

2

[and] . . . [¶] get day for day credit against that six[-]month jail sanction . . . only if [he] successfully completes that program." In reinstating probation under these terms, the court told Aguerrebere, "I am sort of done, and . . . if you do not comply with this probation, or the residential treatment program, upon a return, I will be sending you to state prison."

While in county jail, Aguerrebere applied to the county parole board to serve his time in a residential treatment program, but his application was denied for reasons that are not apparent from the record. Although he reapplied, he withdrew the renewed application. In mid-February 2014, an entity called the Recovery Connections Center evaluated him to "identify substance abuse problems and recommend the appropriate level of care." He "reported that he [did] not have any medical concerns at [that] time."

Aguerrebere was released from county jail for the second time in April 2014, and he remained on probation. Later that month, his probation officer, Lucie Brown, told him to enter a residential treatment program called Lytton Springs. In mid-May, Aguerrebere asked her if he could enter Project 90, a 90-day treatment program, instead. She agreed, based on her understanding that he was having trouble gaining admittance to a program because he was "an arson registrant."[3]

Aguerrebere did not enter either program, however, and in early June, Brown informed him that he had until July 15 to get into a residential treatment program or she would seek to have his probation revoked for the second time. According to Aguerrebere's wife, Brown told Aguerrebere sometime between mid-June and mid-July that he could have an extra 30 days to find a program because she (the wife) was dealing with her own medical condition and needed help caring for their young children.

A few days before July 15, Aguerrebere informed Brown that he had applied to Lytton Springs and another program called Center Point but had not heard back from

---

[3] Section 457.1 imposes various registration requirements on people with convictions for arson-related crimes. Aside from Brown's testimony about what Aguerrebere told her, the record does not contain any evidence that he was required to register as an arsonist.

3

either one.[4]  He mentioned nothing to her about having trouble getting into a program because of a medical condition.

On August 1, Aguerrebere was assessed at Center Point, and he disclosed, for the first time to Brown's knowledge, "numerous medical issues."  Center Point told him to get a medical clearance and report back, but he did not go to a doctor for such a clearance until August 26.  At that appointment, he reported that he "ha[d] varicocele of the [testicles] that flares up 1-2 times monthly" but "denie[d] any symptoms or other chronic conditions at [the] present time."  The doctor indicated that he "need[ed] furt[t]her evaluation as to the condition of his testicular varicocele by a urologist."  Aguerrebere's wife testified that he had first been diagnosed with varicocele a few years earlier and that the condition sometimes caused him to become nauseated or to have trouble walking.

On August 26, Brown learned that Aguerrebere had been cleared to participate in a residential treatment program called Father Alfred's.  But his acceptance into this program was revoked on September 3 "because they wanted him to get clearance from [a] urologist."  Later that week, Aguerrebere was seen by another doctor.  The doctor indicated that Aguerrebere's reported varicocele was "[u]nlikely to cause serious problems" but that she would "refer [him] for [a] urology consult."

A petition to revoke probation for the second time was filed on September 11, 2014, based on Aguerrebere's failure to enter a residential treatment program.  Aguerrebere was remanded to custody, at which point he told Brown that he had only recently become aware that he was required to participate in such a program.  She testified that, to the contrary, she had repeatedly told him that he needed to enroll in a program to comply with the trial court's January 2014 order.  Five days after the petition was filed, Brown learned that Aguerrebere had applied to Lytton Springs, and she was notified on September 23 that he had been admitted to that program.

---

[4] The record contains an intake questionnaire for Lytton Springs that Aguerrebere filled out and dated July 10, but there is no indication he actually submitted it.  According to Brown, he did not apply to Lytton Springs in July.

4

The trial court sustained the petition after a contested hearing in mid-November 2014 at which both Brown and Aguerrebere's wife testified. It found that Aguerrebere had willfully violated his probation:

> "I think so much time and effort has been spent running around after Mr. Aguerrebere trying to get him to follow through with the conditions of his probation. He's been on probation for two years. I did indicate in January that he was to get into and complete a residential treatment program [or that] otherwise he would end up in state prison. As of September 11[,] he still wasn't in a program. That's when the petition was filed. That's nine months later. And one of the frustrating things about this hearing for me is that it appears that everyone wants to blame everybody else, it's probation's fault, it's the defendant's wife's fault, it's the children's fault, it's the medical condition's fault, it's the medical clearance['s] fault, we just couldn't find the right program. I mean, it's just stuff I've heard for years from Mr. Aguerrebere. It's frustrating[, and] . . . I agree with [the prosecutor's] statement that if Mr. Aguerrebere spent as much time trying to get in a program as he did trying to get out of one, he would have been done with probation by now."

The trial court then revoked probation for the second time and sentenced Aguerrebere to state prison. It imposed a total term of three years and eight months, made up of a term of three years for assault and eight months for witness dissuasion. It is this order from which Aguerrebere appeals.

## II.
### DISCUSSION

*A.      General Legal Standards.*

A trial court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of his or her supervision[.]" (§ 1203.2, subd. (a).) The decision to revoke probation involves both "a retrospective factual question whether the probationer has violated a condition of probation . . . and . . . a discretionary determination by the [court] whether violation of a condition warrants revocation of probation." (*Black v. Romano* (1985) 471 U.S. 606, 611.)

Violation of a probation condition must be proven by a preponderance of the evidence (*People v. Urke* (2011) 197 Cal.App.4th 766, 772), but "the evidence must

5

support a conclusion the probationer's conduct constituted a willful violation of the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 982.) We review the trial court's factual determination for substantial evidence (*Urke*, at p. 773), that is, "evidence that is ' "reasonable in nature, credible, and of solid value." ' " (*People v. Medina* (2009) 46 Cal.4th 913, 919.) " 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

After a trial court finds that a defendant violated a probation condition, it must then " 'decide whether under all the circumstances this violation of probation warrants revocation.' " (*In re T.P.* (2009) 178 Cal.App.4th 1, 4.) We review this determination for an abuse of discretion, keeping in mind that " ' "[o]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of . . . revoking probation[.]" ' " (*People v. Urke*, *supra*, 197 Cal.App.4th at p. 773.)

B.      *Substantial Evidence Supports the Determination that Aguerrebere Violated Probation.*

Aguerrebere first claims there was insufficient evidence to support the trial court's finding that he willfully violated probation. In making this argument, he does not dispute that he was subject to a valid condition requiring him to enter a residential treatment program or that he failed to enter such a program. Instead, he argues that his violation was not willful because he "made purposeful and reasonable efforts to enter . . . programs . . . but was denied entry to those programs for reasons beyond his control." We are not persuaded.

Aguerrebere relies on a trio of cases that reversed orders revoking probation where the defendants were unable to comply with probation conditions because of "circumstances beyond [their] control." (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295, 299; *People v. Galvan*, *supra*, 155 Cal.App.4th at pp. 980, 983; *People v.*

6

*Zaring* (1992) 8 Cal.App.4th 362, 378-379.) In *Cervantes*, the defendant did not appear at a hearing as ordered because he was in the custody of federal immigration authorities. (*Cervantes*, at p. 293.) Similarly, in *Galvan*, the defendant failed to report to his probation officer within 24 hours of being released from jail because he was deported upon leaving custody. (*Galvan*, at p. 983.) And in *Zaring*, a last-minute childcare problem caused the defendant to appear 22 minutes late for a hearing the trial court had ordered her to attend. (*Zaring*, at p. 376.) In each case, the appellate court concluded that the defendant's conduct was insufficient to support a finding of a willful violation. (*Cervantes*, at p. 297; *Galvan*, at p. 983; *Zaring*, at p. 379.)

Here, in contrast, there is substantial evidence supporting the trial court's finding that the failure by Aguerrebere to enter a residential treatment program was due to his own procrastination and delays and not due to circumstances outside his control. Although Aguerrebere told Brown in May that he was having trouble getting into a residential treatment program because he was an arson registrant, there is no evidence, other than Aguerrebere's general statement, that any program actually denied him admission for that reason.

And although his varicocele may have hampered his quick entry into certain programs, there is no evidence that Aguerrebere would have been unable to obtain the required medical clearance in plenty of time had he been reasonably diligent in submitting his applications and shepherding the process. He was released from jail in April, but there is little evidence that he actually applied to any program before early August, when he was assessed at Center Point. He was told then that he needed medical clearance, yet he still had not done what was necessary to obtain clearance by the time the petition to revoke was filed, almost six weeks later. Indeed, his admission to Lytton Springs in late September establishes that neither his status as an arson registrant nor his medical condition categorically barred him from admission to an appropriate program. Thus, there is substantial evidence that Aguerrebere's violation was due to his own "irresponsibility" and was therefore willful. (*People v. Zaring*, *supra*, 8 Cal.App.4th at p. 379.)

C. *The Trial Court Did Not Abuse Its Discretion by Refusing to Reinstate Aguerrebere's Probation.*

Aguerrebere also argues that the trial court abused its discretion in two ways when it declined to reinstate his probation after the second revocation. We disagree.

Aguerrebere first argues that the purpose of the probation condition would have been better served if, rather than revoking his probation, the trial court had permitted him to enter Lytton Springs, which had accepted him by the time of sentencing. But even if we were to agree with him that his entering Lytton Springs would have been a better outcome, Aguerrebere provides no authority to suggest that the court's decision to revoke his probation and sentence him to state prison was an abuse of discretion. In spite of the court's clear admonition in January 2014 that the court meant business and would send him to state prison if he failed to comply with his probation conditions, Aguerrebere responded to Brown's repeated demands for him to enroll in a program with avoidance and lethargy. We cannot conclude under these circumstances that the court abused its discretion in sentencing him to prison.

Aguerrebere also argues that the trial court abused its discretion because, according to him, the court had already made up its mind to sentence him to prison before it heard the evidence and the sentence's primary purpose was to teach him a lesson. To be sure, the court expressed frustration with Aguerrebere's failure to enter a residential treatment program and indicated its belief that Aguerrebere was "playing games." But in our view, this frustration was reasonable, and nothing in the record suggests that the court failed to consider the evidence presented or was biased. We believe that the court's "determination that a prison term was required . . . reflect[ed] the same frustration that any other judicial officer might have felt[,] and the decision is one which any other judicial officer might well have made under the same circumstances." (*People v. Downey* (2000) 82 Cal.App.4th 899, 910.) There was no abuse of discretion.

### III.
#### DISPOSITION

The judgment is affirmed.

8

 

                                                            _____

                                                            Humes, P.J.

We concur:


_____

Margulies, J.


_____

Dondero, J.