Filed 6/13/16  P. v. Larson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE, | C073915 |
| Plaintiff and Respondent, | (Super. Ct. No. SF10-422) |
| v. | |
| ERIC THOMAS LARSON, | |
| Defendant and Appellant. | |

Defendant Eric Thomas Larson was placed on three years' formal probation after pleading no contest to felony receipt of stolen property.  (Pen. Code, § 496, subd. (a).)  Defendant twice admitted violating probation.  Each time, the court revoked and reinstated probation subject to the original terms and conditions, and ordered defendant to serve time in county jail.  When defendant violated probation a third time, the court found the alleged violations true, revoked and reinstated probation subject to the original terms and conditions, and ordered defendant to serve 205 days in county jail.

1

On appeal, defendant contends he was denied due process under the state and federal Constitutions because the evidence was insufficient to support the allegations that he failed to report in person to his probation officer and failed to advise his probation officer of changes in his residence. We affirm.

PROCEDURAL BACKGROUND

We need not summarize the facts regarding defendant's underlying crime, as they are unnecessary to the resolution of this appeal.

By agreement, defendant pleaded no contest to a felony, receiving stolen property. As part of the agreement, a second charge was dismissed and probation was granted for three years, with 90 days in county jail. On September 23, 2011, the trial court suspended imposition of sentence and placed defendant on three years' formal probation pursuant to specified terms and conditions. The court placed him "under the supervision and control of the Probation Officer of Nevada County." It ordered him to obey all reasonable and proper instructions given by said Probation Officer, and, during the term of probation, he "shall . . . report in person to the Probation Officer once each month, unless . . . directed by the Probation Officer to report in some other manner." He was ordered to "immediately advise the Probation Officer at least 48 hours in advance of [his] current residence and of any change in such residence." Finally, the court ordered defendant to serve 90 days in county jail, with credit for time served.

On December 30, 2011, the probation department filed a violation report alleging defendant failed to report to his probation officer as directed (count I), and failed to advise his probation officer of his residence and his whereabouts were unknown (count II). Defendant admitted both allegations. The court revoked and reinstated probation subject to the original terms and conditions, and ordered defendant to serve 40 days in county jail and report to probation within 24 hours of release from custody.

On November 20, 2012, the probation department filed a second violation report alleging defendant violated his probation in four ways: he committed another felony,

2

failed to report to his probation officer within 24 hours of his release from custody, failed to report to his probation officer as directed, and failed to advise his probation officer of his residence as directed. Defendant admitted the first allegation and the remaining allegations were dismissed. The court revoked and reinstated probation subject to the original terms and conditions, and ordered defendant to serve another 30 days in county jail and to contact probation upon release from custody.

On May 15, 2013, the probation department filed a third violation report alleging defendant violated his probation in three ways: he failed to report in person to his probation officer for the month of March as directed, failed to report in person to his probation officer for the month of April as directed, and failed to advise his probation officer of changes in residence as directed. The court held another hearing. Defendant and his probation officer, Kenneth Holtgrewe, testified.

Holtgrewe testified defendant reported in person upon his release from custody on February 5, 2013, but thereafter he communicated only by e-mail as follows:[1]

On February 19, 2013, Holtgrewe received the following e-mail from defendant: "Hello Kenneth, I am checking in with u . . . I am in Marin. Havivg hard time finding work . . . Please bare with me. I tring'n too get on my feet . . . I am better than all this disfuction i am exp. . . . Thank You Kenneth."

Holtgrewe responded via e-mail on February 25, 2013, as follows: "I can appreciate that you are having a hard time finding work, a lot of people are having that problem, but in all honesty . . . your checking in with merely saying you are in Marin and little else does very little with letting me know how to reach out and touch you, verify you are not up to criminal activity or in a questionable situation or satisfy your court order to report your physical address, whether that be clean and sober living environment,

---

[1]     Spelling and grammatical errors and underlining are reproduced verbatim.

3

clean and sober homeless shelter, the home of some clean and sober friend or a meth lab located in a high crime and drug traffic area, maybe in Marin, maybe not . . . The court orders that you provide me a location, a condition you accepted and signed to follow . . . provide one or be in violation . . . a copy of this email response and your proceeding email is going into you file awaiting your response . . . failure to respond could also be an issue . . . would like you to be able to stay in Marin if that is where you have your roots."

Holtgrewe next heard from defendant when he received the following e-mail dated March 5, 2013: "Hello Kenneth, I am not on drugs. I do not have a drug problem. I am homeless and tring to stay in good terms with the court. I have not found work. What would you like me to do?" Holtgrewe responded that same day with the following e-mail: "How many times do I have to say this before it sinks in . . . . '<u>The Court</u>' has ordered that you keep me advised of your whereabouts (<u>residence as it may change</u>) and made it an official condition of your probation, thus my ability to reach out and verify you are not living in questionable locations . . . to stay in good terms with the court, you merely need to comply with <u>your court orders</u>."

Next, Holtgrewe received an e-mail from defendant dated March 16, 2013, stating: "Hello Kenneth, The Court is how i want to please. I need to stay in good standings. I can not find a place to live. My sister is in the State of Washington were I could have a address. What would it take for me to move? Would that please you and the Court? I still can not find work to help me get on my feet here . . . . Thank You Kenneth."

Holtgrewe sent defendant the following e-mail dated March 18, 2013: "If you get me <u>a letter from your sister saying you would be allowed to live with her while you check the area out for employment options</u>, I can give you a 30 day pass to go to Washington to check it out . . . (but) <u>you have to return to California and come back to see me</u> (in person) at the end of the 30 days after you have checked it out . . . and provide me with the info you obtain. <u>You cannot move to the state of Washington without the states preapproval</u> of your residence and employment options. If they find that you move

4

before they give you their approval they kick you out of the state immediately or potentially arrest you on an interstate charge . . . crossing state lines is more complicated than county lines. The approval process takes between 30 and 45 days to get approval and they won't begin the process until they are sure you are not in their state."

On April 23, 2013, defendant sent Holtgrewe the following e-mail: "Dear Ken, I am checking in as u want. Living by the Law. At Home. Why will you not transfer my probation to Marin Co.? All this traveling is making it hard to move forward. Thank you."

Holtgrewe responded by e-mail dated April 25, 2013, as follows: "The problem Eric is that Marin County will not accept a transfer of your matter because to date you have not provided me with a residence address and they won't consider a transfer until you do . . . . So the problem/issue is yours . . . and no, you are not checking is as I want and are probably closing in on getting another violation because you did not report (in person monthly to your Probation Officer for March or April) as ordered by the Court in your conditions of probation and to date have not provided a physical address (needed to transfer your matter to Marin County: 'Living at Home', Where is home?) Do you even read your own emails?"

Holtgrewe testified he received no further e-mail communication from defendant. However, on May 14, 2013, or May 15, 2013, defendant walked into Holtgrewe's office to check in, then told Holtgrewe he "had to leave immediately because he had . . . to be in court in Placer County at 8:30." At that point, Holtgrewe took defendant into custody.

Defendant testified he sent Holtgrewe an additional e-mail on May 8, 2013 indicating he was "held over to the 14th" and asking what Holtgrewe wanted him to do. He claimed the e-mail also asked why Holtgrewe was not responding to his e-mails.

Defendant testified he was in Truckee on May 13, 2013 and, when he ran out of money, he tried to hitchhike out of Truckee. He caught a ride early the next morning with someone who was driving to Nevada City, so he decided to "stop in and talk with

5

Kenneth [Holtgrewe] personally." He explained that when he arrived there at 8:25 a.m. and signed in, Holtgrewe initially agreed to let him go to his court appearance, then changed his mind and placed defendant in custody.

Defendant testified, "I only report via e-mail," and explained, "[Holtgrewe] never instructed me on what day he wanted to see me." He explained, "I have no residence. I don't sleep in the same spot--I'm in a different spot every night. [¶] . . . [¶] Outdoors, indoors. I don't know where I'm going to be. You ask me where I am going to be tomorrow I can't tell you because I don't--I try not to come off as a homeless person. I live my life privately and I don't let people know that I am homeless."

Defendant acknowledged having read and signed the terms and conditions of his probation order on September 23, 2011, and that he was required to report once a month to his probation officer. He also acknowledged having admitted a previous failure to report allegation in December 2011. However, when asked whether he knew he was required to report in person unless directed otherwise, he said, "I thought I was directed otherwise from Kenneth because he wasn't giving me a date to appear at his office." Defendant stated he did not report in person because he "wasn't requested to" and he "was reporting via e-mail." He added that he told Holtgrewe he was in Marin and said he thought Holtgrewe "knew I was in Larkspur. It's my home. I have been in Larkspur. I e-mail him from Larkspur Library. So I thought he understood I was in Larkspur. . . . I didn't realize that I needed to let him know my exact location and that's hard for me to do on a day-to-day basis because I don't know where I'm going to be the next day."

The court concluded all the allegations in the violation report were true, revoked and reinstated probation subject to the original terms and conditions, and ordered defendant to serve 205 days in county jail, then to report to probation immediately upon release from custody and report in person to probation each month thereafter.

Defendant filed a timely notice of appeal.

6

DISCUSSION

Defendant contends his due process rights under the state and federal Constitutions were violated because there was insufficient evidence to support the trial court's finding he willfully failed to report in person to his probation officer for the months of March and April 2013 and willfully failed to advise his probation officer of changes in his residence. As such, he claims, the trial court abused its discretion in finding he violated probation.

Beyond his argument heading, defendant makes no mention of, and provides no authority or analysis for, his due process claim. We therefore decline to consider it. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3.) When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' (*Atchley v. City of Fresno* [(1984)] 151 Cal.App.3d [635,] 647 . . . .)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see also Cal. Rules of Court, rule 8.204(a)(1)(B).)

In any event, to the extent defendant claims there is insufficient evidence to support the trial court's finding he violated probation, the claim lacks merit.

"Section 1203.2, subdivision (a), authorizes a court to revoke probation if the interests of justice so require and the court, in its judgment, has reason to believe that the person has violated any of the conditions of his or her probation. [Citation.] ' "When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period. [Citations.]" [Citation.]' [Citation.] The standard of proof in a probation revocation proceeding is proof by a preponderance of the evidence. [Citations.] 'Probation revocation proceedings are not a part of a criminal prosecution, and the trial court has broad

7

discretion in determining whether the probationer has violated probation.' [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 772, fn. omitted.)

"A court may not revoke probation unless the evidence supports 'a conclusion [that] the probationer's conduct constituted a willful violation of the terms and conditions of probation.' [Citation.]" (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295.)

"We review a probation revocation decision pursuant to the substantial evidence standard of review [citation], and great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' [Citation.]" (*People v. Urke, supra*, 197 Cal.App.4th at p. 773; accord, *People v. Kurey* (2001) 88 Cal.App.4th 840, 848 [where trial court resolves conflicting evidence to determine whether probationer willfully violated probation, review on appeal is based on substantial evidence test].)

Here, substantial evidence supports the trial court's finding that defendant violated his probation.

*Failure to Report In Person*

The September 23, 2011 probation order requires that defendant "report in person to the Probation Officer once each month, unless . . . directed by the Probation Officer to report in some other manner." Defendant read and signed the terms and conditions of probation on September 23, 2011.

Upon his release from custody on February 5, 2013, defendant reported in person to Holtgrewe as required. However, from that time forward until May 14, 2013, when he "stop[ped] in" for a quick visit with Holtgrewe, while in route to court, and was taken into custody, defendant failed to report in person.

Conceding the probation condition "required [him] to report in person each month," defendant argues he checked in by e-mail "on a monthly basis" and informed Holtgrewe that he was checking in, seeking work, and trying to stay on good terms with

8

the court. This approach to "compliance" with express, unambiguous court orders was defendant's unilateral, arbitrary, and repeated decision. There is nothing in the e-mail communications between defendant and Holtgrewe, or in the record otherwise, that demonstrates Holtgrewe directed defendant to report in some manner other than in person as the court clearly ordered. To the contrary, on March 5, 2013, Holtgrewe emphasized to defendant that he must "comply with <u>your court orders</u>," and later, on April 25, 2013, scolded him by writing, "[Y]ou are <u>not checking [in] as I want</u> . . . because you did not report (<u>in person monthly to your Probation Officer for March or April</u>) as ordered by the Court in your conditions of probation."

Defendant attempts to blame Holtgrewe for his own, repeated failure to report in person. He points to prior e-mail communications he had with Holtgrewe in October 2012, arguing they contain evidence that Holtgrewe expressly instructed him to report in person and when to report, and further demonstrate that Holtgrewe "knew how to be clear and demanding" regarding in-person reporting, something he failed to do in the 2013 e-mails. Instead, defendant argues, Holtgrewe acquiesced in monthly e-mail communication, which therefore sufficed for purposes of defendant's reporting requirement. We disagree.

By way of background, the first of the October 2012 e-mails is an e-mail from Holtgrewe to defendant, dated October 11, 2012, which contains only a subject line reading: "U R becoming an issue in Placer Co, unless the problems stop U could face another jail term here." The next e-mail from defendant to Holtgrewe is dated October 19, 2012, and reads: "I can not get there . . . u don,t pick up phone calls . . . no message on your cell . . . can u reschule for early next week?" Holtgrewe replied that same day via the following e-mail: "I called back the number you called from earlier today and left a message with the girl that answered the phone to direct you to keep trying to call me at my direct number, I'm there now . . . whether or not I request a bench warrant depends on how quickly you can get in to make up for the missed appointment."

9

The next e-mail sent by defendant, dated October 23, 2012, reads: "when can I reach u in your office? I do not need a nother warrant, thank you." Holtgrewe responded that day with the following e-mail: "I am in the office most of the day Thursday and Friday after 11:00 [a.m.] up to 4:30 [p.m.]"

Nearly a week later, on October 29, 2012, defendant e-mailed Holtgrewe the following: "I'm in route to you, I did not check e mail till today. What day this week Ken?" The final e-mail from Holtgrewe, dated October 31, 2012, reads: "I said Thursday or Friday of last week and here it is Wednesday of the following week and I still haven't seen you . . . despite you saying last Monday that you were on your way . . . I guess you want a warrant."

It is clear from the October 2012 e-mails that defendant missed an appointment sometime during the week of October 11, 2012, and thereafter failed to meet with Holtgrewe in person despite representing that he was "in route." It is also clear that Holtgrewe expected defendant to come into the office, and was not at all pleased when defendant repeatedly failed to do so. However, nothing in the 2012 e-mails suggests Holtgrewe either changed his manner of communicating with defendant about the requirement to appear in person, or otherwise instructed defendant to report in some other manner. The mere fact, of necessity, Holtgrewe communicated with defendant occasionally by e-mail did not modify the terms and conditions imposed on defendant as conditions of his probation by the court.

Finally, relying on *People v. Zaring* (1992) 8 Cal.App.4th 362 (*Zaring*) and *People v. Galvan* (2007) 155 Cal.App.4th 978 (*Galvan*), defendant argues there is insufficient evidence to support the trial court's finding he willfully violated probation because there is no evidence his conduct "was the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court." (*Galvan, supra*, at p. 983.) Both cases are distinguishable.

10

The defendant in *Zaring* was released from custody on a Thursday but ordered to appear in court at 8:30 a.m. sharp the following Monday for a hearing regarding her acceptance into a drug program. That Monday, she arrived 22 minutes late and was taken into custody. At the subsequent probation revocation hearing, she explained she had arranged for a ride to court (she lived 35 miles from the courthouse), but the ride fell through at the last minute due to a childcare problem. The court terminated her probation and sentenced her to state prison, finding she willfully violated the terms of her probation by not appearing in court " 'on time.' " (*Zaring, supra,* 8 Cal.App.4th at pp. 365-367, 376, 379.)

The Court of Appeal held the trial court abused its discretion by revoking probation because the defendant's violation was not willful. The appellate court concluded the defendant "was confronted with a last minute unforeseen circumstance as well as a parental responsibility common to virtually every family. Nothing in the record supports the conclusion that her conduct was the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court. . . . [W]e cannot in good conscience find the evidence supports the conclusion that the conduct of [the defendant], even assuming the order was a probationary condition, constituted a willful violation of that condition." (*Zaring, supra*, 8 Cal.App.4th at p. 379, fns. omitted.)

In contrast, here the probation condition required defendant to report to his probation officer in person *each month*. He willfully failed to do so in March and again, in April 2013. Defendant's failure to comply with the in-person reporting condition was not the consequence of last minute unforeseen circumstances confronting him. His use of e-mails and, thus, his failures to personally report, were his choice alone. This demonstrated defendant's willful failure to comply with the terms of the probation order.

In *Galvan*, the defendant was placed on probation in two separate cases subject to these terms and conditions: serve 365 days in county jail; report to his probation officer within 24 hours of his release from custody; and, in the event of leaving the country, he

11

must reenter the United States legally and report to probation within 24 hours of reentry into the United States, and provide documentation proving he is in the United States legally. (*Galvan, supra,* 155 Cal.App.4th at pp. 980-981.) When he failed to appear for a subsequent probation violation hearing, he was arrested in the United States and taken into custody. At the formal probation violation hearing, the probation officer testified the defendant had been deported to Mexico and then returned to the United States on some unknown date, and there was no record of the defendant having reported to probation after his release from county jail. (*Id.* at p. 981.) The trial court revoked probation in both cases. (*Ibid.*)

The Court of Appeal held the trial court abused its discretion in revoking probation, concluding the defendant's failure to report in person was "not 'the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court,' nor did it 'constitute[] a willful violation of [his probation] condition,' " because his deportation "obviously prevented him from reporting in person." (*Galvan, supra*, 155 Cal.App.4th at p. 985, quoting *Zaring, supra,* 8 Cal.App.4th at p. 379.)

To the contrary, there was nothing here that prevented defendant from reporting in person to Holtgrewe. Again, he willfully failed to comply with the terms of the probation order.

Substantial evidence supports the trial court's finding defendant willfully failed to report in person to his probation officer for the months of March and April 2013.

*Failure to Advise of Changes of Address*

The September 23, 2011, probation order also requires defendant to advise his probation officer of his "current residence and of any change in such residence." Again, defendant read and signed the terms and conditions of his probation.

Defendant was released from custody on February 5, 2013. Over the course of the next three months, defendant e-mailed Holtgrewe four times, and made no attempt to

12

provide Holtgrewe with information regarding his specific whereabouts.[2] For example, on February 19, 2013, defendant informed Holtgrewe he was "in Marin." Holtgrewe's response reminded defendant he needed to let Holtgrewe know "how to reach out and touch" defendant to be able to verify a physical address. Thereafter, defendant informed Holtgrewe he was "homeless and [trying] to stay on good terms with the court," he could not find a place to live and was interested in moving to Washington to live with his sister, and he was "Living by the Law . . . At Home." However, he avoided Holtgrewe's repeated requests for a physical address and refused to answer Holtgrewe's question, "Where is home?"

Defendant argues he did not willfully fail to advise Holtgrewe of changes in his residence because he "was homeless, did not have a residence, and was living in Marin County," and "would sleep in a different spot [every night] whether that be indoors or outdoors." He says he provided Holtgrewe with information regarding "the general area he was living." We disagree.

The fact defendant was homeless did not vitiate the express court order that he account for his whereabouts, a condition to which he expressly agreed. As Holtgrewe testified, it is acceptable for a probationer to be homeless, so long as the probationer has "some place to stay." According to Holtgrewe, while probationers often claim as their address the hospitality house or the house of a friend, a more general description such as a homeless shelter or under a bridge will suffice. At a minimum, defendant was required to let his probation officer "know where [defendant is] staying, he is existing. He is living somewhere. Whether that be in a homeless shelter or friends or somewhere, he is living somewhere." Although Holtgrewe communicated as much to defendant, defendant

---

[2]     Defendant testified regarding a fifth e-mail on May 8, 2013.

13

willfully and repeatedly refused to be more specific about where he was staying other than to say he was "in Marin."

There is sufficient evidence defendant willfully failed to advise Holtgrewe of changes in residence.

In light of our conclusion that sufficient evidence supports the trial court's finding defendant willfully violated probation, we need not address defendant's claim that the trial court abused its discretion in so finding.

## DISPOSITION

The judgment is affirmed.


    NICHOLSON    , Acting P. J.


We concur:


    BUTZ    , J.


    DUARTE    , J.