Filed 9/10/20  P. v. Kazaryan CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B299698 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA469982) |
| v. | |
| ELVIS KAZARYAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Bork, Judge.  Affirmed.

A. William Bartz, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and David E. Madeo and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Elvis Kazaryan appeals from the trial court's order revoking his probation and sentencing him to county jail after the court found he willfully violated terms and conditions of his probation that required him to enroll and participate in an inpatient drug treatment program and to notify the court if he failed to complete it. Kazaryan argues that the trial court misunderstood "the actual terms of probation" because the drug treatment facility had discretion to enroll him in an outpatient program and that his failure to complete the outpatient program was not willful because he lacked transportation to get to the program. Because substantial evidence supported the trial court's findings, we affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

A. *Kazaryan Pleads Guilty to Transporting a Controlled Substance, and the Trial Court Places Him on Probation*

The People charged Kazaryan with transporting a controlled substance for sale (Health & Saf. Code, § 11379, subd. (a)) and alleged he had served four prior prison terms within the meaning of Penal Code section 667.5, subdivision (b).[1] Kazaryan pleaded guilty and admitted the allegations (which the court later struck). The court suspended imposition of the sentence and placed Kazaryan on formal probation for three

---

[1] Undesignated statutory references are to the Penal Code.

2

years.  One of the conditions of Kazaryan's probation was not to use or possess controlled substances.

B.    *Kazaryan Violates the Terms of His Probation, and the Trial Court Orders Him To Enroll in a Drug Treatment Program*

Two months after the court placed Kazaryan on probation, he was arrested for possessing methamphetamine.  The court held a probation violation hearing, read and considered a probation report, and heard from a drug and alcohol placement coordinator who works in the courthouse and makes recommendations whether the court should refer defendants to a drug program.  The drug placement coordinator initially recommended Kazaryan enroll in an outpatient drug program because Kazaryan said that he had a job and that "his parents [were] willing to take him back" into their home.  The drug placement coordinator stated his "biggest fear was to put [Kazaryan] into an inpatient program where he would lose his job and . . . family support."  The coordinator stated a facility with an inpatient program Kazaryan had previously attended, FFC Substance Abuse Foundation (FFC), was willing to enroll him again in its inpatient program.  The coordinator suggested the court transfer Kazaryan "as a residential [patient], through the transport order by the sheriffs," to FFC, where a program social worker could conduct an assessment, verify Kazaryan had a residence and employment, and recommend whether Kazaryan's placement should be residential or outpatient.  The coordinator recommended Kazaryan "do residential for 90 days and then do outpatient."

3

The trial court stated that the drug placement coordinator's recommendation was "a good approach" and that the court would "go along with" it. Without objection from counsel, the trial court ordered the sheriff's department to transport Kazaryan to FFC and ordered Kazaryan to return to court in 60 days. The trial court asked the drug placement coordinator to obtain for the next court date a letter from FFC representatives "indicating what they have designed for [Kazaryan] programmatically," and the coordinator said he would provide the letter and bring Kazaryan to court "with an escort." The trial court also ordered the probation department to submit a supplemental report confirming Kazaryan had "a place to stay and a job," so that Kazaryan's residence and employment information could be "looked at by two sources." The trial court ordered Kazaryan to "be released only to an authorized representative of" FFC, to "comply with all program terms and conditions," and to report to the court if he "left or was discharged from the program for any reason prior to completion." The trial court asked Kazaryan if he admitted his probation violation, and Kazaryan said he did.

C.  *Kazaryan Violates His Probation by Failing To Follow FFC's Rules*

A week after the probation violation hearing, on a Monday, the sheriff's department transported Kazaryan to FFC and released him to the program. Frances Carrillo, an FFC employee, told Kazaryan that he would be enrolled in the inpatient program, but that he would qualify for the outpatient program if he submitted proof of residence and employment. Kazaryan agreed and left the facility. He returned the next day, Tuesday, for his intake appointment, but he did not provide proof of

4

residence or employment.  Carrillo reminded Kazaryan that he had to provide proof of residence and employment in order to enroll in the outpatient program and that he had to attend group sessions Monday through Saturday.  Kazaryan submitted to a random drug test, which was positive for methamphetamine, and left FFC without attending a group session.  Kazaryan did not return Wednesday or Thursday.  On Friday Carrillo called Kazaryan to tell him she would notify the court he had failed to comply with FFC program rules.  Kazaryan told Carrillo he would not be able to attend the program at FFC "because it was far for him."  Later that day the drug placement coordinator spoke with Kazaryan and called Carrillo to assure her Kazaryan would attend the program the following Monday.  Kazaryan, however, did not return to FFC on Monday, and Carrillo notified the court the program had discharged Kazaryan.

D. *The Trial Court Revokes Kazaryan's Probation and Sentences Him*

The trial court set the matter for a probation violation hearing, stating it considered Kazaryan's discharge from FFC "aggravated conduct."  The trial court cited Kazaryan's lengthy criminal history and stated Kazaryan "probably had no intent to stay, let alone take advantage of, the program."  The court also stated that, based on the number of times the court had previously referred Kazaryan to a drug treatment program in lieu of jail time, the court "doubt[ed] the efficacy of trying this approach again."

At the probation violation hearing, counsel for Kazaryan asked the trial court to "reconsider letting him re-enroll" in a drug treatment program.  The trial court stated:  "It appears to

the court from the available evidence that he never had any intent of going and doing the program that we sent him to. Given that and given the fact of his exceedingly lengthy criminal history that includes 13 felony convictions and 31 misdemeanor convictions, I am not inclined to revisit the issue." The trial court continued the hearing to allow the prosecution to subpoena Carrillo.

Carrillo, Kazaryan, and the drug placement coordinator testified at the probation violation hearing. Carrillo stated that, despite her repeated requests, Kazaryan never provided proof of residence or employment. She stated that when Kazaryan arrived at FFC she asked him whether he was going to return to the facility, and Kazaryan said "he was not gonna have a problem." Carrillo stated that when she called Kazaryan on Friday to tell him she was going to send a discharge letter to the trial court, Kazaryan told her he would not return to FFC because it was too far away. Carrillo also testified Kazaryan had previously been in FFC's inpatient program and was fully "aware of the process" and the program rules.

Kazaryan testified that he had no means of transportation because his driver's license was suspended and he could not obtain insurance, that his cousin drove him to FFC for his appointment on Tuesday but could not drive him the next day, and that he did not tell his family that if he failed to attend the program the court would revoke his probation. When his attorney asked him why he did not submit proof of residence or employment, Kazaryan stated, "I forgot it." When his attorney asked him if there was a reason he could not take public transportation to FFC, Kazaryan stated, "No. I don't have no reason for it." When his attorney asked him if there was a reason

he did not "try to go back there and work something out" with FFC, despite his belief Carrillo had already sent the discharge letter, Kazaryan stated, "No, there isn't." And when his attorney asked him if he had considered contacting the court to explain his transportation challenges, Kazaryan stated, "No, I didn't." Kazaryan testified he did not go back to FFC the following Monday because he thought Carrillo had already notified the court of his violation.

The prosecutor asked Kazaryan if he was aware FFC offered group sessions at different times during the day. Kazaryan responded, "I think it's five sessions I could have gone to, but I didn't go to them, to be exact." When the prosecutor asked him why he did not take public transportation to FFC, Kazaryan stated, "I have never in my life rode a bus. I don't even know how . . . . " Kazaryan also said that, although he "had problems finishing" court-ordered drug programs in the past, he was now willing "to do the residential program" and comply with any conditions the trial court imposed.

The drug placement coordinator testified that, when he spoke with Kazaryan on Friday, Kazaryan told him he "didn't want to go back [to FFC] at all" and that he did not give a reason or say he did not have transportation. After the drug placement coordinator urged him to go back to FFC, Kazaryan agreed and said he "ha[d] a ride to go on Monday." The drug placement coordinator stated he believed Kazaryan understood "what was happening" and he recommended placing Kazaryan in "a very strict program."

The trial court found by a preponderance of the evidence Kazaryan willfully violated the terms and conditions of his probation. The court stated: "The court ordered [Kazaryan]

7

personally in court to perform an inpatient program at FFC. Sheriffs released him to that program. He asked [FFC] to convert it to outpatient. [FFC] apparently agreed to do so even though the court had ordered him to do inpatient. But instead, the court is of the view, based on the evidence before it, that he never intended to do the inpatient program. Instead, he talked [FFC] into an outpatient program, but even as to that, he did not follow up with that program requirement, and ultimately they sent . . . a discharge report . . . . Additionally, he is in violation because he did not come to court after the discharge or notify the court. So it is the court's view that Mr. Kazaryan never had any intention of following through with the court-ordered inpatient program that he was ordered to do."

The trial court revoked probation and proceeded to sentence Kazaryan. The prosecutor argued that, because the drug test FFC administered at intake was positive for methamphetamine, there was no point "in trying to put [Kazaryan] back in another program or putting him back on probation." The trial court, observing Kazaryan had a "considerable" criminal history, sentenced him to four years in county jail. Kazaryan timely appealed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

At any time during probation the trial court may hold a hearing to "revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person has violated any of the conditions" of probation. (§ 1203.2, subd. (a); see *People v. Leiva*

8

(2013) 56 Cal.4th 498, 504-505.) "In essence, the issue at a probation revocation hearing is whether the defendant's conduct demonstrates that the leniency extended by the grant of probation remains justified." (*People v. Garcia* (2006) 39 Cal.4th 1070, 1087.) A trial court's decision to revoke probation under section 1203.2, subdivision (a), need only be supported by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445, 447.) The evidence, however, must show "'the probationer's conduct constituted a willful violation of the terms and conditions of probation.'" (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295; see *People v. Galvan* (2007) 155 Cal.App.4th 978, 982.)

"We review a probation revocation decision pursuant to the substantial evidence standard of review [citation], and great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.'" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) "We consider 'whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision.'" (*People v. Buell* (2017) 16 Cal.App.5th 682, 687.)

> B. *Substantial Evidence Supported the Trial Court's Finding Kazaryan Violated Probation*

Kazaryan argues substantial evidence did not support the trial court's findings he violated the terms and conditions of his probation by failing to enroll and participate in an inpatient program because the trial court did not order him to enroll in an

9

inpatient program. Kazaryan argues that, when the court revoked his probation, the court "was operating under a misunderstanding of the actual terms" of his probation because, according to Kazaryan, whether he would have to enroll in an inpatient or outpatient program "was going to be left to the discretion of the drug treatment program." He also argues his failure to enroll in the outpatient program was not willful because FFC was far away and he did not have transportation. Substantial evidence, however, supported the trial court's findings.

1. *Substantial Evidence Supported the Trial Court's Finding Kazaryan Violated Probation by Failing To Enroll in an Inpatient Program*

It is undisputed Kazaryan did not enroll in an inpatient, residential drug treatment program. Kazaryan's primary argument is that he did not have to. Kazaryan is wrong. The record is clear the trial court intended Kazaryan to enroll in an inpatient drug program.

At the probation violation hearing, the drug placement coordinator stated that his personal preference was for Kazaryan to enroll in an outpatient program, but that he was "not the professional to make that decision." The drug placement coordinator stated that FFC was willing to enroll Kazaryan in its inpatient program, that Kazaryan previously attended its inpatient program, and that Kazaryan should enroll as a residential patient. The coordinator told the court FFC would conduct an assessment, which included verifying Kazaryan's residence and employment, to consider whether Kazaryan could enroll in the outpatient program. He suggested Kazaryan start

10

with a 90-day residential program and then transition to an outpatient program. The court agreed with the recommendation. The court did not give FFC discretion to select a program when Kazaryan arrived at FFC; the court only agreed that FFC could make an assessment and that the court would consider that assessment in determining whether Kazaryan could switch to an outpatient program. The trial court expected Kazaryan to return to court for the next hearing in 60 days with a report and "an escort" from FFC, which indicates the court intended Kazaryan to remain at FFC for at least 60 days until his next court hearing.

Moreover, the trial court was aware Kazaryan had unsuccessfully participated in several drug programs in the past. Given Kazaryan's history of drug-related crimes, the trial court had good reason to impose the more restrictive program, as the drug placement coordinator had ultimately recommended. (See *People v. Urke, supra*, 197 Cal.App.4th at p. 774 [courts may "devise reasonable conditions of probation in order to foster the reformation and rehabilitation of the probationer and to protect public safety"].) And if Kazaryan had any doubts or questions about the terms and conditions of his probation, including whether they allowed him to enroll in an outpatient program, he could have sought clarification from the court. (See *People v. Olguin* (2008) 45 Cal.4th 375, 379 ["'[o]ral advice at the time of sentencing . . . afford[s] defendants the opportunity to clarify any conditions they may not understand and . . . to exercise the right to reject probation granted on conditions deemed too onerous'"].) Thus, Kazaryan violated the terms and conditions of his probation when he failed to enroll in an inpatient program.

11

2. *Substantial Evidence Also Supported the Trial Court's Finding Kazaryan Violated Probation by Failing To Enroll in Any Program and To Report to the Court*

Even if, as Kazaryan incorrectly argues, the trial court gave FFC discretion to enroll him in an outpatient program, Kazaryan violated (Kazaryan's version of) the terms and conditions of his probation by failing to comply with the rules of that program. Carrillo told Kazaryan twice that in order to enroll in the outpatient program he had to provide proof of residence and employment. Kazaryan "forgot" to do so and left FFC both days he was there without attending a group session. Although at the probation violation hearing Kazaryan denied he violated the terms and conditions of his probation, on appeal he admits he "technically violated his grant of probation by not returning to FFC." He asserts, however, that his transportation problem was a "very credible reason" for violating probation. Substantial evidence supported the trial court's finding that this did not excuse Kazaryan's violation.

"Where a probationer is unable to comply with a probation condition because of circumstances beyond his or her control and defendant's conduct was not contumacious, revoking probation and imposing a prison term" is reversible error. (*People v. Cervantes, supra*, 175 Cal.App.4th at p. 295; see *People v. Hartley* (2016) 248 Cal.App.4th 620, 634 [violation of a probation condition is not willful if it occurs ""'by mere misfortune or accident"'"].) Thus, a trial court's discretion to revoke probation requires the court to consider "that life is not always predictable and that things do not always go according to plan." (*People v. Zaring* (1992) 8 Cal.App.4th 362, 379; see *People v. Galvan,*

12

*supra*, 155 Cal.App.4th at p. 985 [defendant's failure to report to his probation officer was not willful where the defendant had been involuntarily deported]; *Zaring*, at pp. 377, 379 [defendant's violation of a probation condition to appear for a court hearing was not willful because the defendant had an unexpected change in childcare because of a caregiver's illness, lived 35 miles from the courthouse, and was only 22 minutes late to the hearing].) But a trial court may find a defendant willfully violated the terms and conditions of his or her probation if the defendant's "conduct was the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court." (*Zaring*, at p. 379.)

There was ample evidence Kazaryan's conduct was willful and irresponsible. Kazaryan told Carrillo and the drug placement coordinator he would have no difficulty participating in programs at FFC. It was only after Carrillo informed him she was going to send a discharge letter to the court that Kazaryan complained FFC was too far away. When Kazaryan did not return to FFC on Wednesday or Thursday, he did not tell FFC (or the court) he had transportation issues. Even after breaking his promise to return to the program the following Monday, Kazaryan never mentioned transportation issues, and instead admitted he had "no reason for" failing to return.

While Kazaryan's hesitancy to use alternative or unfamiliar modes of transportation (assuming he actually had transportation problems) may have been inconvenient, it was not "an insurmountable obstacle" (*People v. Cervantes*, *supra*, 175 Cal.App.4th at p. 293), nor did it make him unable to comply with the terms and conditions of his probation. Kazaryan could have resolved any transportation problems he may have had by

13

enrolling in the inpatient program, learning how to ride a bus, using a rideshare service, disclosing to his family and friends the consequences of not enrolling and participating in the program and asking for their help, or reaching out to FFC, his probation officer, or the court to explain his situation or for assistance. Kazaryan had been ordered to complete drug programs several times in the past and was all too familiar with the consequences of failing to comply with program rules. (See *People v. Hall* (2017) 2 Cal.5th 494, 501 ["'[t]he word "wil[l]fully" . . . implies that the person knows what he is doing'"].)

Finally, Kazaryan also violated his probation by not reporting to court after FFC discharged him from the program. Again, Kazaryan did not provide a reason for failing to report, which alone justified revocation of his probation. (See *People v. Bagley* (1963) 218 Cal.App.2d 809, 811 [trial court did not abuse its discretion in revoking probation where the court imposed a reporting condition, and the defendant failed to report to his probation officer or the court].)

## DISPOSITION

The order revoking Kazaryan's probation is affirmed.


SEGAL, J.


We concur:



PERLUSS, P. J.          FEUER, J.


14